**Robert ROE, Consolidated–Plaintiff,**

**Thomas W. Cobb, Plaintiff–Consolidated–Defendant–Appellant,**

**Raymond J. Cerilli, Plaintiff–Counter–Defendant–Appellant,**

**v.**

**Ronald MARCOTTE, Ronald Cormier, Michael Santese, Donald Popillo, Consolidated–Defendants–Appellees,**

**v.**

**Robert Bosco, Defendant–Counter–Claimant,**

**Larry R. Meachum, Commissioner, Official capacity; Leonard Barbieri, Warden, Official capacity; Scott Hadlak, Counselor, Official capacity; Beth Halleran; John Doe, Official capacity; Department of Correction; John J. Armstrong; Kenneth J. Kirschner, Defendants–Counter–Claimants–Appellees,**

Office of Adult Probation, Counter–
Defendant–Appellee.

Docket No. 98–2790

United States Court of Appeals,
Second Circuit.

Argued: June 28, 1999

Decided: Sept. 16, 1999

PETER L. COSTAS, Pepe & Hazard LLP, Hartford, CT, for Appellant Thomas W. Cobb.

RAYMOND J. CERILLI, Cheshire, CT, Appellant, Pro se.

TERRENCE M. O'NEILL, Assistant Attorney General, State of Connecticut, Hartford, CT (Richard Blumenthal, Attorney General for the State of Connecticut; Aaron S. Bayer, Deputy Attorney General, and Margaret Quilter Chapple, Assistant Attorney General, on the Brief), for Defendants–Counter–Claimants–Appellees Meachum, Barbieri, Hadlock, Halleran, Armstrong, Kirschner, and the State of Connecticut.

Before: KEARSE, STRAUB, and POOLER, Circuit Judges.

POOLER, Circuit Judge:

Plaintiffs, imprisoned upon their conviction of sexual offenses under Connecticut state law, challenge the constitutionality of Conn. Gen.Stat. § 54–102g, which, among other things, requires all convicted sexual offenders who were incarcerated on the statute's effective date to submit a blood sample for analysis and inclusion in a DNA (deoxyribonucleic acid) data bank. Plaintiffs appeal from a judgment of the United States District Court for the District of Connecticut (Squatrito, *J.*) dismissing their challenges to the statute's constitutionality. They argue that the statute violates the Fourth Amendment's prohibition against unreasonable searches and seizures and the Fourteenth Amendment's guarantee of equal protection. We conclude that the statute is constitutional and affirm the judgment of the district court.

## BACKGROUND

The underlying facts of this case are undisputed. Plaintiffs Thomas W. Cobb and Raymond J. Cerilli are inmates in the custody of the Connecticut Department of Correction. On January 9, 1990, a court sentenced Cobb to a 25–year term of imprisonment upon his conviction of two

counts of second degree sexual assault in violation of Conn. Gen.Stat. ("C.G.S.") § 53a–71(a)(1) and three counts of risk of injury to a minor in violation of C.G.S. § 53–21 in connection with the repeated sexual assault of his minor step-daughter. Cerilli currently is serving a 53–year sentence following his conviction of, among other things, first degree sexual assault in violation of C.G.S. § 53a–70(a). Defendants are current or former officers or employees of the State of Connecticut Department of Correction and Office of Adult Probation.

In 1994, the Connecticut legislature adopted Public Act 94–246, which was codified as C.G.S. § 54–102g ("the statute"). The effective date of the statute is October 1, 1994. It provides, in part:

> (a) Any person who (1) is convicted of a violation of section 53a–70, 53a–70a, 53a–70b, 53a–71, 53a–72a or 53a–72b on or after October 1, 1994, and is sentenced to the custody of the Commissioner of Correction or (2) has been convicted of a violation of [the previously referenced sections] and on October 1, 1994, is in the custody of the Commissioner of Correction shall, prior to release from such custody, have a sample of his blood taken for DNA (deoxyribonucleic acid) analysis to determine identification characteristics specific to the person.

> (b) Any person convicted of a violation of [the previously referenced sections] on or after October 1, 1994, who is not sentenced to a term of confinement shall, as a condition of such sentence, have a sample of his blood taken for DNA (deoxyribonucleic acid) analysis to determine identification characteristics specific to the person.

Trained medical personnel must take the blood sample, and the Connecticut state police forensic science laboratory must perform the analysis. *See id.* §§ 54–102h, 54–102i. The results of the testing must remain stored in a confidential data bank. *See id.* § 54–102i. However, "[t]he [anonymous] results of an analysis and comparison of the identification characteristics from two or more blood or other biological samples shall be made available directly to federal, state and local law enforcement officers upon request made in furtherance of an official investigation of any criminal offense." *Id.* § 54–102j(a). "Only when a sample or DNA profile supplied by the person making the request satisfactorily matches a profile in the data bank shall the existence of data in the data bank be confirmed or identifying information from the data bank be disseminated." *Id.* § 54–102j(b).

Plaintiffs are subject to the provisions of the statute because of their convictions of sex offenses specified under the statute and their continued incarceration on or after October 1, 1994. To date, both have refused defendants' request that they submit a blood sample for analysis and inclusion in the data bank. In light of plaintiffs' refusal, the Attorney General of the State of Connecticut has the authority pursuant to State of Connecticut Department of Correction Administrative Directive No. 9.3 to seek a court order compelling them to provide a DNA sample.

In April 1995 and December 1995 respectively, Cerilli and Cobb filed complaints challenging the validity of the statute and seeking to prevent defendants from forcibly taking their blood. The court appointed Attorney Peter L. Costas *pro bono* counsel for Cerilli in October 1995 and for Cobb in January 1996. Upon plaintiffs' motions, the district court consolidated the two cases on September 9, 1996.[1] Thereafter, plaintiffs filed amended complaints alleging that the statute violated their federal constitutional rights in that it (1) constituted an *ex post facto* law;

---

1. The court also granted plaintiffs' request that the action be consolidated with one brought by Robert Roe, who challenged only the community notification portion of the statute. Our decision in that case is reported as *Roe v. Office of Adult Probation*, 125 F.3d 47 (2d Cir.1997). Roe is not a party to this appeal.

(2) violated their rights to due process and equal protection; (3) authorized an unreasonable search and seizure in violation of the Fourth Amendment; (4) inflicted cruel and unusual punishment in violation of the Eight Amendment; and (5) violated their right to privacy. Plaintiffs also alleged a claim under 42 U.S.C. § 1983 for deprivation of constitutional rights and sought redress for violations of various rights guaranteed by the Connecticut constitution. Plaintiffs sought compensatory and punitive damages, as well as an injunction preventing defendants' involuntary taking of their blood and a judgment declaring the statute unconstitutional. Defendants counterclaimed for a declaratory judgment upholding the statute's constitutionality and an injunction compelling plaintiffs to submit to the taking of a blood sample and allowing defendants to use reasonable force if necessary.

On cross-motions for summary judgment, the district court granted defendants' motion in part, dismissing all of plaintiffs' federal claims and declaring the statute constitutional, and denied plaintiffs' motion. The court dismissed plaintiffs' state law claims without prejudice to refiling in state court. The court later reopened and vacated its entry of summary judgment as to plaintiffs' Section 1983 claims.[2] The district court then entered a partial judgment and certified the constitutionality issue for immediate appeal pursuant to 28 U.S.C. § 1292(b).[3] Plaintiffs filed notices of appeal on August 29, 1998.

In July 1998, Attorney Costas moved for leave to withdraw as counsel to Cerilli, citing disagreements as to strategy and Cerilli's dissatisfaction with Costas' representation. The court granted Costas' motion to withdraw. Cerilli filed several motions in this Court for assignment of counsel, all of which we denied because Cerilli requested counsel to address issues not properly before the Court on appeal. In a May 28, 1999, order denying Cerilli's motion for assignment of counsel, we advised the parties that the appeal would proceed and argument would be scheduled despite Cerilli's failure to file a *pro se* brief by May 13, 1999, in compliance with a scheduling order. Costas perfected Cobb's appeal and appeared at oral argument. We now turn to Cobb's contentions.

## DISCUSSION

Cobb does not seek to declare the entire DNA statute unconstitutional, but rather seeks to invalidate "only that portion which encompasses sexual offenders who were imprisoned on its effective date ... whether or not their current imprisonment was predicated upon a sexual offense." Although he asserted numerous constitutional challenges below, Cobb raises only two on appeal: that the statute violates the Fourth Amendment's prohibition against unreasonable searches and seizures and that it violates the Equal Protection Clause of the Fourteenth Amendment. The Court reviews *de novo* the district court's grant of summary judgment. *See Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995).

### I. Fourth Amendment

Cobb argues that the statute violates the Fourth Amendment because it compels him to produce evidence that may be used in future criminal investigations merely because of his status as a convicted sex offender and without requiring a showing of probable cause or reasonable suspicion that he has committed a particular crime.

**2.** Concluding that the Section 1983 claims would require a hearing, the parties agreed to reserve this claim.

**3.** The court thereafter withdrew its Section 1292(b) certification and ordered entry of final judgment on plaintiffs' first eleven causes of action under Fed.R.Civ.P. 54(b). Pursuant to Rule 54(b), the court certified that there was "no just reason for delay" in entering a final judgment dismissing the claims challenging the constitutionality of the statute, thereby permitting an immediate appeal of that dismissal.

Defendants respond that the statute withstands Fourth Amendment scrutiny because the intrusion it occasions is minimal and justified by a significant governmental interest.

■ Defendants do not dispute the well-established principle that "a 'compelled intrusio[n] into the body for blood to be analyzed' ... must be deemed a Fourth Amendment search." *Skinner v. Railway Labor Execs. Ass'n*, 489 U.S. 602, 616, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (quoting *Schmerber v. California*, 384 U.S. 757, 767–68, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Thus, we need only decide whether the statutorily required blood test at issue comports with the Fourth Amendment's mandate that a search be reasonable. *See id.* at 619, 109 S.Ct. 1402 ("Fourth Amendment does not proscribe all searches and seizures, but only those that are unreasonable").

■ What is reasonable "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself," and the permissibility of the search is "judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Id.* (internal quotation marks and citations omitted). The Supreme Court has stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish*, 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

■ In most criminal cases, courts strike the reasonableness balance in favor of the Warrant Clause of the Fourth Amendment; except in well-defined circumstances, a search is not reasonable unless it is carried out pursuant to a judicial warrant issued on probable cause. *See Skinner*, 489 U.S. at 619, 109 S.Ct. 1402. In general, searches performed in the absence of a warrant and pursuant to an exception must nevertheless be predicated upon "probable cause to believe that the person to be searched has violated the law," or, at the very least, "some quantum of individualized suspicion." *Id.* at 624, 109 S.Ct. 1402.

■ However, the concept of probable cause is "peculiarly related to criminal investigations" in which a specific individual is the target of government suspicion; in these cases searches are carried out "solely for the purpose of investigating criminal conduct, ... [and] the validity of the searches [is] therefore dependent on application of the probable-cause and warrant requirements." *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) (internal quotation marks and citations omitted). In certain circumstances, generally outside the traditional law enforcement setting, a search may be reasonable even when predicated upon less than probable cause or individualized suspicion where "special needs, beyond the normal need for law enforcement" render those requirements impracticable. *Skinner*, 489 U.S. at 619, 109 S.Ct. 1402 (internal quotation marks and citation omitted) As the Supreme Court stated in *Skinner*:

> When the balance of interests precludes insistence on a showing of probable cause, we have usually required some quantum of individualized suspicion before concluding that a search is reasonable. We made it clear, however, that *a showing of individualized suspicion is not a constitutional floor, below which a search must be presumed unreasonable.* In limited circumstances, where the privacy interests implicated by the search are minimal, and where an important governmental interest furthered by the

intrusion would be placed in jeopardy by a requirement of individualized suspicion, a search may be reasonable despite the absence of such suspicion.

489 U.S. at 624, 109 S.Ct. 1402 (emphasis added) (internal quotation marks and citations omitted); *see also New Jersey v. T.L.O.*, 469 U.S. 325, 340, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) ("probable cause is not an irreducible requirement of a valid search;" "fundamental command" of Fourth Amendment is that searches be reasonable) (internal quotation marks omitted).

The Supreme Court has applied the so-called "special needs" exception outside the criminal investigatory context. In these cases, a significant governmental interest, such as the maintenance of institutional security, public safety, and order, must prevail over a minimal intrusion on an individual's privacy rights to justify a search on less than individualized suspicion. For example, the Court has employed this exception to uphold the constitutionality of searches and seizures designed to maintain order and security in hospitals, *see O'Connor v. Ortega*, 480 U.S. 709, 725, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (search of employees' desks and offices "should be judged by the standard of reasonableness" articulated in the "special needs" exception); in schools, *see T.L.O.*, 469 U.S. at 346-47, 105 S.Ct. 733 (search of student property without probable cause was reasonable); in highly regulated industries, *see Skinner*, 489 U.S. at 633, 109 S.Ct. 1402 (blood and urine tests to determine alcohol use following rail accidents justified by safety concerns); and in government agencies, *see National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 666-67, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (United States Customs Service's mandatory testing of employees who applied for promotion or transfer to positions directly involving the interdiction of illegal drugs or to positions that required employee to carry a firearm was reason-able despite absence of probable cause or some level of reasonable suspicion). The "special needs" cases reaffirm "the long-standing principle that neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *Von Raab*, 489 U.S. at 665, 109 S.Ct. 1384 (citing *Skinner*, 489 U.S. at 618-24, 109 S.Ct. 1402).

■ The "special needs" exception also applies to the prison setting. While convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement, the rights they retain are subject to restrictions dictated by concerns for institutional security, order, and discipline. In *Bell*, 441 U.S. at 558-60, 99 S.Ct. 1861, for example, the Court upheld the constitutionality of body cavity inspections of inmates following "contact visits," even in the absence of probable cause, in light of the unique security dangers inherent in a detention facility, including the "all too common" occurrence of the smuggling of drugs, weapons, and other contraband. Similarly, the Tenth Circuit has held that a prison may require inmates to undergo blood testing for Acquired Immune Deficiency Syndrome (AIDS) in order to ascertain the extent to which inmates are infected with the disease and to control and prevent the spread of AIDS in prison. *See Dunn v. White*, 880 F.2d 1188, 1195-97 (10th Cir. 1989) (recognizing that although the Fourth Amendment preserves a prisoner's "privacy expectation in his body," the government's interest in protecting inmate health and safety justified the minimal bodily intrusion occasioned by the blood test).

■ As plaintiffs correctly note, the requirement in the statute before us that prisoners provide a DNA sample for a state and national data bank is not motivated by concerns for inmate safety and health, institutional order, or discipline. For this reason, none of the "special

needs" cases involving prisons that defendants cite is precisely on point. Nevertheless, the statute may still be constitutional if defendants can show some other significant governmental interest in the form of "special needs beyond normal law enforcement," even if those "special needs" are not tied directly to institutional concerns. In this regard, *Griffin v. Wisconsin*, 483 U.S. 868, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987), provides a helpful analogy.

In *Griffin*, the Supreme Court reviewed a Wisconsin Department of Health and Social Services ("DHSS") regulation that permitted a warrantless search of a probationer's home if there existed "reasonable grounds" to believe that the probationer possessed contraband, including items he was prohibited from possessing under the conditions of his probation. *See Id.* at 870–71, 107 S.Ct. 3164. The Court observed that "[a] State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements" and that "in certain circumstances government investigators conducting searches pursuant to a regulatory scheme need not adhere to the usual warrant or probable-cause requirements as long as their searches meet 'reasonable legislative or administrative standards.'" *Id.* at 873–74, 107 S.Ct. 3164 (quoting *Camara v. Municipal Court*, 387 U.S. 523, 538, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967)). The Court upheld the search of Griffin's home, without regard to whether the information on which the probation officer initiated the search satisfied a federal "reasonable grounds" standard, because the regulation authorizing the search was itself sufficient to satisfy the Fourth Amendment's reasonableness requirement. *See id.* at 872–73, 107 S.Ct. 3164. Griffin, as a probationer committed to the legal custody of the DHSS, was subject to a range of restrictions "meant to assure that the probation serve[d] as a

period of genuine rehabilitation and that the community [was] not harmed by [his] being at large." *Id.* at 875, 107 S.Ct. 3164. Relying on research that indicated that more intensive supervision of probationers reduced recidivism, the Court concluded that supervision was a "'special need' of the State permitting a degree of impingement upon privacy that would not be constitutional if applied to the public at large." *Id.* at 875, 107 S.Ct. 3164.

We conclude that a reasoned interpretation of the "special needs" doctrine supports the constitutionality of the DNA statute. In defense of the statute, defendants cite studies indicating a high rate of recidivism among sexual offenders. Moreover, DNA evidence is particularly useful in investigating sexual offenses and identifying the perpetrators because of the nature of the evidence left at the scenes of these crimes and the demonstrated reliability of DNA testing. Defendants argue that the existence of state and national DNA data banks will serve an important governmental interest in solving both past and future crimes. More importantly, they contend that the statute's requirement that imprisoned sexual offenders provide a DNA sample will deter these individuals from committing future offenses of a similar nature. Balanced against this significant interest is the drawing of a blood sample for testing, an intrusion that the Supreme Court has characterized as minimal. *See Skinner*, 489 U.S. at 625, 109 S.Ct. 1402 (citing *Winston v. Lee*, 470 U.S. 753, 762, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985)) (noting that Court's decision in *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), "confirmed society's judgment that blood tests do not constitute an unduly extensive imposition on an individual's privacy and bodily integrity"). Although the samples may later be used for law enforcement purposes, traditional concerns of probable cause and reasonable suspicion are minimized by the statute's blanket approach to testing. *See Von*

*Raab*, 489 U.S. at 667, 109 S.Ct. 1384 (Customs Service's testing of all employees who applied for particular positions was reasonable because no official discretion was involved. "Because the Service does not make a discretionary determination to search based on a judgment that certain conditions are present, there are simply 'no special facts for a neutral magistrate to evaluate.'") (quoting *South Dakota v. Opperman*, 428 U.S. 364, 383, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (Powell, J., concurring)). Upon consideration of the minimal intrusion involved, the important state interest, and the lack of discretionary decisions, we conclude that the balance of interests in this case tips in defendants' favor and conclude that the DNA statute survives Fourth Amendment scrutiny. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 455, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (employing balancing test to uphold highway sobriety checkpoints). To the extent that "[t]he ensuing chemical analysis of the [DNA] sample to obtain physiological data is a further invasion of the tested [individual's] privacy interests," *see Skinner*, 489 U.S. at 616, 109 S.Ct. 1402, we conclude that the statute provides adequate safeguards to ensure that the intrusion is minimal. For example, the statute regulates the manner in which defendants conduct the blood test and analyze the results, *see* Conn. Gen. Stat. §§ 54–102h, 54–102i; restricts access to and secures the confidentiality of the results, *see id.* § 54–102j; and provides for the expungement of the results from the data bank upon the reversal or dismissal of a conviction, *see id.* § 54–102l.

Our holding comports with the conclusions reached by the three circuit courts of appeals that have thus far examined the constitutionality of nearly identical DNA statutes. *See Boling v. Romer*, 101 F.3d 1336 (10th Cir.1996); *Rise v. State of Oregon*, 59 F.3d 1556 (9th Cir.1995); *Jones v. Murray*, 962 F.2d 302 (4th Cir.1992). The district court principally relied on the Fourth Circuit's decision in *Jones* to support its rejection of plaintiffs' Fourth Amendment challenge. We turn now to a brief discussion of *Jones* because although we affirm the district court's finding as to the statute's constitutionality, we do so for reasons different from those articulated by the Fourth Circuit and cited by the district court.

In *Jones*, the Court reviewed a Virginia statute that, insofar as is relevant here, required all convicted sex offenders who were incarcerated on the statute's effective date to provide a blood sample for DNA analysis and storage. *See Jones*, 962 F.2d at 304 (citing Va.Code Ann. § 19.2-310.2). Examining the statute's validity under the Fourth Amendment, the court held:

We have not been made aware of any case ... establishing a per se Fourth Amendment requirement of probable cause, or even a lesser degree of individualized suspicion, when government officials conduct a limited search for the purpose of ascertaining and recording the identity of a person who is lawfully confined to prison. This is not surprising when we consider that probable cause had already supplied the basis for bringing the person within the criminal justice system. With the person's loss of liberty upon arrest comes the loss of at least some, if not all, rights to personal privacy otherwise protected by the Fourth Amendment.

*Id.* at 306. The court noted that it found support for its holding in "the fact that the Supreme Court has not categorically required individualized suspicion in the case of every search which advances a law enforcement objective," alluding presumably to the "special needs" exception. *Id.* at 307 n. 2. However, the court also stated explicitly that its holding did not rest on the "special needs" doctrine because it considered "cases which involve the Fourth Amendment rights of prison inmates to comprise a separate category of cases to which the usual per se requirement of probable cause does not apply." *Id.* The court went on to conclude that the

governmental interest at stake—"preserving a permanent identification record of convicted felons for resolving past and future crimes"—outweighed the "slight intrusion" in giving a blood sample. *Id.* at 307.

Judge Murnaghan agreed that the Virginia statute was constitutional insofar as it required DNA samples from violent felons but dissented from the majority's view that the statute constitutionally could take DNA from non-violent offenders. In an opinion concurring as to the testing of violent felons, he criticized the majority for its "strikingly truncated view of the Fourth Amendment protections afforded to a convicted felon." *Id.* at 311 (Murnaghan, *J.*, concurring in part and dissenting in part). Judge Murnaghan went on to state:

> Prisoners most assuredly do give up specific aspects of their reasonable expectation of privacy because of practical concerns relating to living conditions, and because of the necessities involved in ensuring prison security. However, in the present case, appellants have not forfeited their expectation of privacy with respect to blood testing, and no practical penal concern justifies the departure involved in the DNA procedure. Accordingly, the Commonwealth's DNA testing procedure should be reviewed under the standard applied to a search of any individual when such a search is not based on individualized suspicion: the privacy interest of the prisoner in remaining free of bodily invasion should be balanced against the state interest in carrying out the search.

*Id.* at 312. Judge Murnaghan concluded that prisoners have no expectation of privacy in their cells and "lose the aspect of their right to privacy that protects them from routine searches." *Id.* at 312–13. He pointed out, however, that this diminished privacy expectation directly results from "practical considerations requiring additional authority on the part of prison officials to control potentially dangerous prison communities." *Id.* at 313. Because the state's DNA testing requirement was not justified by internal prison security needs, Judge Murnaghan believed that prisoners had a "reasonable expectation of privacy within [their] bod[ies]." *Id.* at 312. Although concurring in the ultimate conclusion that the statute was constitutional as to violent felons, Judge Murnaghan advocated a different test for evaluating prisoners' Fourth Amendment rights:

> Justification for searches of these individuals must be based, as must all searches of citizens in a free society still clinging to disappearing Fourth Amendment protections, on a balancing of the privacy interest involved against the state interest in the search to determine which interest is more compelling. *See Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990). It is with a reasoned application of the *Sitz* standard, and not with a disturbing restriction of the Fourth Amendment protections afforded to the nation's prisoners, that the DNA testing procedure, as applied to felons convicted of violent crime, may be justified.

*Id.* at 313. Because the record indicated that violent offenders posed a significant risk of recidivism, Judge Murnaghan agreed with the majority that DNA testing of violent offenders was constitutional. However, he would have held that the "extremely tenuous link connecting persons convicted of non-violent felonies to the commission of future violent crime" rendered the statute unconstitutional as applied to non-violent offenders. *Id.* at 314.

Judge Marathon's analysis provides a more compelling rationale for upholding the DNA statute's constitutionality than does the *Jones* majority opinion. Clearly, the cases in which the Supreme Court has concluded that prisoners forfeit their Fourth Amendment rights upon incarceration deal with searches of their cells or their persons for reasons of safety and

orderly administration of prison facilities, concerns not implicated here. Thus, for the reasons stated above, we join the circuits that have upheld the constitutionality of similar statutes but depart from the rationale adopted by those circuits and, as set forth above, premise our holding upon the "special needs" exception. *See State v. Olivas,* 122 Wash.2d 73, 856 P.2d 1076, 1086 (1993) (en banc) (upholding constitutionality of DNA testing of violent offenders and sexual offenders and concluding that application of "special needs" balancing test was "a better reasoned approach" than the Fourth Circuit's analysis in *Jones,* which "diminished the privacy rights of convicted persons."). Because studies cited by defendants indicate a high rate of recidivism among sexual offenders, and because DNA evidence is particularly useful in solving such crimes, the statute passes the "special needs" balancing test.

## II. Equal Protection

 Cobb argues that the statute violates the Equal Protection Clause because it (1) impermissibly distinguishes between individuals convicted of crimes characterized as sexual offenses and those convicted of other violent offenses, (2) targets incarcerated sex offenders but not prior sex offenders who currently reside in the community, and (3) targets convicted sex offenders whether or not their current incarceration is for a sex offense. Because Cobb alleges a classification based on the nature of his offense, his challenge to the DNA statute is entitled to only "rational basis" and not "strict scrutiny" review. *See Chapman v. United States,* 500 U.S. 453, 465, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) (applying rational basis test to classification based on nature of offense); *see also Artway v. Attorney General,* 81 F.3d 1235, 1267 (3d Cir.1996) (sex offenders are not a suspect class for purposes of Fourteenth Amendment analysis). Under the rational basis test, the "statute is presumed to be valid and will be sustained if the classification is rationally related to a legitimate state interest."

*Bankers Life & Cas. Co. v. Crenshaw,* 486 U.S. 71, 81, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988) (internal quotation marks omitted). The district court correctly found that the statute survives a rational basis analysis. Plaintiffs presented no evidence that there was a compelling need to test other violent felons. In any event, the statute's claimed "underinclusiveness" does not provide a basis for invalidating it. *See Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 487–89, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (under rational basis review, legislature may proceed "one step at a time"). We therefore conclude that the statute does not violate the Equal Protection Clause.

## CONCLUSION

For the reasons stated, we affirm the judgment of the district court.