Argued and submitted September 6, 2006, decision of Court of Appeals and judgment of circuit court affirmed June 21, 2007

STATE OF OREGON,
*Respondent on Review,*

*v.*

TRAVIS RAY SANDERS,
*Petitioner on Review.*

(CC 011137484; CA A122330; SC S53056)

163 P3d 607

Susan F. Drake, Deputy Public Defender, Salem, argued the cause and filed the brief for petitioner on review. With her on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Mary H. Williams, Solicitor General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Janet A. Klapstein, Assistant Attorney General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, and Kistler, Justices.**

GILLETTE, J.

---

** Riggs, J., retired September 30, 2006, and did not participate in the decision of this case. Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Walters, and Linder, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This criminal case presents the issue whether a state statute mandating the collection of blood or buccal samples for purposes of DNA profiling from all persons convicted of felonies violates either the state or federal constitutional prohibitions against unreasonable searches and seizures. The Court of Appeals upheld a trial court order requiring the defendant to submit a blood or buccal sample as a condition of his probation. *State v. Sanders*, 202 Or App 672, 126 P3d 1260 (2005). For the reasons set out below, we affirm the decision of the Court of Appeals.

The operative facts are brief and undisputed. In 2003, after a jury trial, defendant was convicted of the felony offense of fleeing or attempting to elude a police officer in a motor vehicle.[1] Under ORS 137.076, because defendant had been convicted of a felony,[2] the trial court was required to include in the judgment of conviction an order requiring defendant to submit a blood or buccal sample at the request of either the Department of Corrections or a law enforcement agency.[3] If the court were to sentence defendant to probation,

---

[1] ORS 811.540(1)(b)(A). Defendant also was convicted of the misdemeanor offense of fleeing or attempting to elude a police officer on foot. ORS 811.540(1)(b)(B).

[2] ORS 137.076 applies to persons convicted of certain other crimes in addition to those convicted of felonies. We have not been asked to, and we do not address the constitutionality of ORS 137.076 as it applies to persons convicted of crimes other than felonies.

[3] ORS 137.076 provides, in part:

"(1) This section applies to any person convicted of:

"(a) A felony;

"* * * * *

"(2) When a person is convicted of an offense listed in subsection (1) of this section:

"(a) The person shall, whether or not ordered to do so by the court under paragraph (b) of this subsection, provide a blood or buccal sample at the request of the appropriate agency designated in paragraph (c) of this subsection.

"(b) The court shall include in the judgment of conviction an order stating that a blood or buccal sample is required to be obtained at the request of the appropriate agency and, unless the convicted person lacks the ability to pay, that the person shall reimburse the appropriate agency for the cost of obtaining and transmitting the blood or buccal sample. If the judgment sentences the convicted person to probation, the court shall order the convicted person to

then the court would be required to include an order to submit the sample as a condition of probation. ORS 137.076(2)(b). Before sentencing, defendant moved to prohibit the seizure of his DNA through a blood or buccal sample under ORS 137.076 on the ground that requiring him to submit to such a procedure would violate his state and federal constitutional rights to be free from unreasonable searches and seizures. The trial court rejected defendant's arguments, sentenced defendant to 18 months' probation on the felony conviction,[4] and imposed various conditions of probation including, as required under ORS 137.076(2)(b), a direction that defendant provide a blood or buccal sample at the request of the Multnomah County Sheriff or the state Department of Corrections.

Defendant appealed the sentence to the Court of Appeals, assigning error to the trial court's imposition of the condition of probation requiring him to submit a blood or buccal sample. As noted, the Court of Appeals affirmed without opinion.

In this court, defendant reprises his arguments that the requirement in ORS 137.076 that he provide a blood or buccal sample violates his state and federal constitutional rights to be free from unreasonable searches and seizures. He

---

submit to the obtaining of a blood or buccal sample as a condition of the probation.

"(c) * * * The appropriate agency shall be:

"(A) The Department of Corrections, whenever the convicted person is committed to the legal and physical custody of the department.

"(B) In all other cases, the law enforcement agency attending upon the court."

ORS 137.076 further provides that no sample is required if taking the sample would pose a substantial or unreasonable risk to the health of the convicted person and that its terms apply retroactively to anyone who was convicted of one of the enumerated crimes since 1991 and presently is incarcerated or on probation for that offense. ORS 137.076(4)(b) and (5).

Another statute, ORS 181.085, sets out procedures and rules for the storage, analysis, and use of the samples collected under ORS 137.076. In addition, among other things, ORS 181.085 provides that any person ordered to provide a sample under ORS 137.076 whose conviction later is reversed can request the destruction of the sample and any criminal identification record created in connection with that sample. ORS 181.085(8)(a).

[4] Defendant was sentenced to 18 months' probation on the misdemeanor conviction as well.

argues that, for purposes of both constitutions, taking a blood or buccal sample is both a search and a seizure. Defendant then contends that that search and seizure is done without a warrant, and without probable cause or even reasonable suspicion, and does not fall within any exception to the warrant requirement under either constitution. Therefore, according to defendant, the search and seizure are unreasonable and unconstitutional.

■ In analyzing the constitutionality of ORS 137.076, we follow our usual paradigm: We consider state constitutional claims before considering federal constitutional claims. *See State v. Cookman*, 324 Or 19, 25, 920 P2d 1086 (1996) (so stating). Article I, section 9, of the Oregon Constitution provides:

> "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

■■ Under Article I, section 9, a "search" occurs when a government agent invades an individual's protected privacy interest. *State v. Tiner*, 340 Or 551, 562, 135 P3d 305 (2006). The privacy that is protected under Article I, section 9, is the "privacy to which one has a *right*." *State v. Campbell*, 306 Or 157, 164, 759 P2d 1040 (1988) (emphasis in original). One ordinarily has a right to privacy that extends to protecting against having a government agent draw one's blood, and this court has stated that "[t]he extraction of a blood sample by the police is both a search of the person and the seizure of an 'effect'—the person's blood." *State v. Milligan*, 304 Or 659, 664, 748 P2d 130 (1988). One ordinarily also has a right to privacy that protects against having a government agent swab the inside of one's cheek and then testing the swab to reveal physiological data. Thus, in requiring convicted felons to provide a blood or buccal sample, ORS 137.076 effectively subjects those individuals to what commonly would be understood to be searches and seizures as an additional consequence of their convictions. If the person is sentenced to a term of imprisonment, then the Department of Corrections performs the search and seizure upon incarceration. ORS

137.076(2)(c)(A). If, on the other hand, the person is sentenced to a term of probation, then the statute directs the trial court to order the convicted person to submit to that search and seizure as a condition of the probation. ORS 137.076(2)(b).

■ In our view, it is the requirement of a felony conviction that is the key here. In most of the cases that we have cited above, the person whose privacy interests were invaded without a warrant had not been convicted. In those cases, the state had no basis for arguing that the person had any lesser privacy right than the general public. On the other hand, the warrant requirement never has been applied to convicted persons who have been placed in state custody as a result of their convictions. That is so because it is inherent in the very notion of punishment for a felony conviction that an offender's freedom is or may be drastically curtailed. As this court recently stated in *Tiner*, in rejecting a defendant's challenge to the state's taking photographs of the tattoos on his chest,

> "Neither the United States Constitution nor the Oregon Constitution requires a search warrant or its equivalent before the state may take pictures of or inspect defendant's torso because, once defendant became a prisoner, he enjoyed few rights regarding his privacy. * * * Once defendant was imprisoned, he lacked the right to privacy that he enjoyed when he was not in prison. Among the rights that he forfeited was the right to keep his personal appearance[—]including any distinguishing marks such as tattoos—from being known to the state."

340 Or at 563 (citations omitted). *See also Sterling v. Cupp*, 290 Or 611, 620, 625 P2d 123 (1981) ("Those sentenced to prison forfeit many rights that accompany freedom."); *State v. Lippert*, 317 Or 397, 856 P2d 634 (1993) (seizure of paperfold containing controlled substance from defendant's pocket permissible, when defendant placed in protective custody for detoxification).

Similarly, probationers and other conditional releasees who have been lawfully convicted of a felony do not

enjoy the full panoply of rights that the general public possesses. Rather, they are subject to a broad range of restrictions that might infringe on what otherwise would be constitutional rights of a person in a free society. Many such restrictions last only for the duration of the supervision or probation period. For example, probationers and parolees, while they are on probation or parole, often are forbidden to use liquor, to associate with certain people, to travel outside the state, and to change jobs or move without first seeking permission. In addition, at least one permissible restriction on a convicted felon's constitutional rights is permanent, whether that person has been sentenced to a term of imprisonment or to probation: Felony offenders permanently lose their state (and, perhaps, federal) constitutional right to bear arms as a consequence of conviction. *See* ORS 166.270 (making it a felony for a convicted felon to possess a firearm and a misdemeanor for a convicted felon to possess other "restricted weapons"); *see also* 18 USC § 922(g)(1) (making it a federal offense for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to transport, possess, or receive a firearm or ammunition that has been shipped or transported in interstate or foreign commerce); *State v. Hirsch/Friend*, 338 Or 622, 114 P3d 1104 (2005) (statute making it a crime for felon to possess firearm not unconstitutional under Article I, section 27, of the Oregon Constitution).

It follows from the foregoing that ORS 137.076 does not necessarily deprive felony offenders (be they prisoners, persons on supervision, or probationers) of certain of their constitutional rights in general, or of their Article I, section 9, rights in particular, by subjecting them to a specific form of search and seizure *as a consequence of their convictions*. Furthermore, the statute narrows the class of persons potentially subject to it by limiting its terms to felons and persons convicted of certain other serious offenses.

We turn to consider the nature of the search itself. The blood or buccal sample that a convicted felon must provide under ORS 137.076 permits the state to derive that person's DNA profile. That profile establishes a record of the convicted person's identity (an extremely accurate and detailed one). No particularized probable cause or suspicion is needed

to justify gathering or retaining a permanent record of a person's identity through fingerprints and photographs, even when he or she has only been arrested, and this court never has required that a person's fingerprints and photographs be discarded after their initial evidentiary and identification purposes had been served or after that person has completed his or her sentence and/or period of supervision or conditional release. The fact that DNA testing enables the state to obtain and preserve a much more accurate record of identification of a convicted person does not meaningfully distinguish taking that person's blood or buccal sample from taking his or her fingerprints or photograph. If the former methods of obtaining and preserving identification information are permissible under Article I, section 9—and we do not understand defendant to argue that they are not—then we can perceive no principled basis for declaring that the blood and buccal samples at issue here are different in any constitutionally significant way.[5]

Defendant argues that Article I, section 9, which provides that "no law" shall infringe on the "people's" right to be free from unreasonable searches and seizures, imposes a limit on the government's power that is not dependent on the status of the person who asserts it. However, as is evident from our discussion above, we think that there are constitutionally sound reasons to distinguish between suspicionless searches of and seizures from the general public and such searches of and seizures from the far more narrowed class of prisoners, probationers, and other conditional releasees who have been convicted of felonies. The first group is made up of presumably law-abiding citizens who are entitled to all the rights afforded by our constitution, but the other is composed

---

[5] Nor do we think that the fact that taking a blood or buccal sample involves a physical intrusion into the convicted person's body distinguishes in a meaningful way that type of search and seizure from other types of searches commonly conducted on prisoners, probationers, and other conditional releasees. First, taking a swab from a person's cheek is only minimally invasive and involves little or no risk or even discomfort to the person providing the sample. Moreover, in this day and age, and with the protections that ORS 137.076 affords in designating how and by whom blood samples are to be taken, see ORS 137.076(3)(a) (blood sample may only be drawn in medically acceptable manner by licensed professional or person acting under such person's direction or control), we also do not think that blood extractions from convicted persons constitute an unduly invasive imposition on an individual's bodily integrity.

of lawfully adjudicated criminals whose proven felonious conduct substantially heightens the government's interest in identifying and monitoring them. That conduct can and does properly carry lasting consequences. It follows that what we may view as constitutionally unreasonable when done to those in the first group we appropriately may view as permissible when done to those in the second.[6] We hold that the requirement in ORS 137.076 that persons convicted of felonies—this case presents only the "felony" component of the statute—provide a blood or buccal sample does not violate Article I, section 9, of the Oregon Constitution.

Defendant also challenges the requirement in ORS 137.076 that he provide a blood or buccal sample under the Fourth Amendment to the United States Constitution, which provides:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Unlike Article I, section 9, of the Oregon Constitution, which protects against intrusions into a person's protected privacy interests, the Fourth Amendment protects a person's reasonable expectation of privacy. *See Oliver v. United States*, 466 US 170, 177, 104 S Ct 1735, 80 L Ed 2d 214 (1984) (so stating). The United States Supreme Court has held that prisoners, probationers, and other conditional releasees have reduced expectations of privacy and, therefore, they may be deprived of many constitutional rights and freedoms that law-abiding citizens enjoy, including the right to be free from unreasonable searches and seizures under the Fourth Amendment. *United States v. Knights*, 534 US 112, 119-21, 122 S Ct 587, 151 L Ed 2d 497 (2001). Recently, the Court held that it is appropriate to examine the totality of the circumstances to determine whether a search is reasonable

---

[6] In reaching that conclusion, we do not suggest that prisoners, probationers, or other conditional releasees forfeit all rights they might have under Article I, section 9, of the Oregon Constitution. Our holding in this case is limited to the relatively narrow issue presented by the present facts.

within the meaning of the Fourth Amendment. *Samson v. California*, 547 US 843, 126 S Ct 2193, 2197, 165 L Ed 2d 250 (2006). According to the Court, whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes on an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate state interests. *Id.* Applying that test, the Court upheld against a Fourth Amendment challenge the suspicionless search of a California parolee under a California law that required parolees to agree, as a condition of parole, to be subjected to search and seizure at any time. *Id.* at 2202.

The Supreme Court has not yet considered the constitutionality of any state or federal law requiring convicted persons to provide DNA samples. However, our research shows that every federal appellate court that has considered the matter has concluded that such laws do not violate the Fourth Amendment. *See, e.g., United States v. Kincade*, 379 F3d 813, 839 (9th Cir 2004), *cert den*, 544 US 924 (2005); *Green v. Berge*, 354 F3d 675, 679 (7th Cir 2004); *Groceman v. US Dept of Justice*, 354 F3d 411, 413 (5th Cir 2004); *United States v. Kimler*, 335 F3d 1132, 1146 (10th Cir), *cert den*, 540 US 1083 (2003); *Roe v. Marcotte*, 193 F3d 72, 79 (2d Cir 1999); *Jones v. Murray*, 962 F2d 302, 306-07 (4th Cir), *cert den*, 506 US 977 (1992) (all so holding). The reasoning in those opinions satisfies us that the requirement in ORS 137.076 that convicted felons submit a blood or buccal sample is reasonable under the totality of the circumstances and does not violate the Fourth Amendment to the United States Constitution.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.