Argued and submitted November 27, 2012, reversed and remanded on Counts 9 to 14 and remanded for resentencing in Case No. 09CR0468; otherwise affirmed December 26, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

KENNETH EVERETT MOORE,
*Defendant-Appellant.*

Coos County Circuit Court
09CR0469, 09CR0468;
A144873 (Control), A145298

317 P3d 293

Anne Fujita Munsey, Senior Deputy Public Defender, argued the cause for appellant. With her on the opening and reply briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services. Kenneth E. Moore filed the supplemental brief *pro se.*

David B. Thompson, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Haselton, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant challenges a judgment of conviction stemming from a trial in two consolidated cases, one tried to a jury and the other to the court. In the jury trial case, defendant was convicted of six counts of first-degree rape, ORS 163.375(1)(c) (Counts 9 to 14); two counts of attempting to elude a police officer, ORS 811.540 (Counts 15 and 17); felon in possession of a firearm, ORS 166.270 (Count 16); and reckless driving, ORS 811.140 (Count 18). He was acquitted of second-degree criminal mischief, ORS 164.354 (Count 19). In the bench trial case, defendant was convicted of 27 counts of violating a restraining order, ORS 33.015.

Defendant's contentions on appeal pertain to the jury trial case. Defendant contends, among other things, that the trial court erred when it denied his motion to suppress evidence of a manuscript that was seized from a jail cell where he was detained pending trial; specifically, he asserts that the search of the cell and seizure of the manuscript violated his rights under Article I, section 9, of the Oregon Constitution.[1] Defendant relies upon *State v. Hartman*, 238 Or App 582, 243 P3d 480 (2010), *adh'd to as modified on recons*, 241 Or App 195, 248 P3d 448 (2011), a case where we affirmed the suppression of evidence that was seized and removed from a pretrial detainee who was lodged in a jail cell. Because the state, under *Hartman*, may not subject a pretrial detainee's noncontraband property to a warrantless seizure solely for the purpose of obtaining evidence, we agree that the seizure of defendant's manuscript was unlawful. And because the admission of that evidence was harmful as to the rape charges, we reverse and remand on Counts 9 to 14 in the jury trial case, and otherwise affirm the remaining convictions in both cases.[2]

---

[1] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

[2] Defendant contends that the trial court made additional errors. We reject without further discussion defendant's second assignment of error—relating to the admission into evidence of a writing containing defendant's self-reflections—and his third assignment of error—contending that the trial court erred in denying his motion for a mistrial in the jury trial case after an officer testified that defendant had invoked his right to counsel. Furthermore, because we reverse defendant's rape convictions and remand for a new trial on those charges, we need not address defendant's fourth and fifth assignments of error and the assignments of error raised in defendant's *pro se* brief.

We review the trial court's denial of a motion to suppress for errors of law. ORS 138.220. Here, the trial court made findings of fact on the motion to suppress. Those findings are binding on appeal if there is sufficient evidence in the record to support them. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993). The following facts are taken from, or are consistent with, the trial court's findings.

Defendant's stepdaughter, H, reported that defendant had been sexually abusing her since she was 12 years old. In addition, defendant's wife complained to police that defendant left her messages in violation of a restraining order. A warrant issued for defendant's arrest, and defendant was captured after a high-speed chase.

While being held at the Coos County Jail pending trial, defendant allowed a fellow inmate to read the manuscript of a book that defendant was writing. The inmate later told police that the manuscript contained information about the alleged sexual abuse.

An investigating detective asked Grant, a jail supervisor, to search for defendant's manuscript. Without a warrant, Grant and a deputy searched all of the cells in defendant's cell block, looking for that evidence. Grant found the manuscript on the desk in defendant's jail cell. Although most of the manuscript was in an unmarked white envelope, a few pages were loose on the desk. Grant seized the entire manuscript, including the loose pages, and turned it over to the district attorney.

At a pretrial hearing, defendant moved to suppress all evidence of the manuscript "seized from the defendant's jail cell." Defendant contended that suppression was required under Article I, section 9, and the Fourth Amendment to the United States Constitution because "defendant is being held pretrial, and * * * the evidence was seized without a warrant; without probable cause and exigent circumstances; and without reasonable suspicion."

In a letter opinion, the trial court denied defendant's motion to suppress. The trial court found that Grant had followed the search policy for jail searches. It further found that

"defendant, as an inmate, in a jail has no expectation of privacy in his cell and the items therein, *see Hudson v. Palmer*, 468 US 517[, 104 S Ct 3194, 82 L Ed 2d 393] (1984) and *State v. Tiner*, 340 Or 551, 563[, 135 P3d 305] (2006), except legal documents, and [Grant] respected defendant's privacy right to legal documents. The manuscript, as long as it is relevant, is admissible."

Accordingly, the manuscript was admitted into evidence. Defendant was convicted as noted above and now appeals.

On appeal, defendant renews the arguments that he made to the trial court. In addition to *Hudson*, defendant acknowledges two Oregon Supreme Court cases that conclude that an inmate has diminished privacy interests that are protected by Article I, section 9, while the inmate is confined in a jail cell: *State v. Tiner*, 340 Or 551, 135 P3d 305 (2006) (when a defendant is incarcerated for a felony conviction, the police may lawfully photograph that defendant's tattoos as evidence because such a defendant lacks the right to keep his personal appearance from being known to the state), and *State v. Sanders*, 343 Or 35, 41, 163 P3d 607 (2007) (when a defendant is on probation following a felony conviction, the police may lawfully collect blood or buccal samples for purposes of DNA profiling because such a defendant is "subject to a broad range of restrictions that might infringe on what otherwise would be constitutional rights of a person in a free society"). Defendant argues, however, that the privacy rights of pretrial detainees are not similarly restricted. Citing *Hartman*, he contends that pretrial detainees retain some measure of privacy rights, that those rights were violated when Grant seized his manuscript without a warrant, and that the seizure cannot be justified as part of an administrative search. Defendant further argues that the seizure in this case was even more egregious than the seizure at issue in *Hartman* because the manuscript was a written document containing his thoughts.[3]

---

[3] Defendant contends that the seizure of his manuscript implicated his rights against self-incrimination, as protected by Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution. Beyond mere citations to those constitutional provisions, however, defendant develops no argument and cites no authority supporting that contention. Because that issue was not raised below, we do not address it.

The state responds that suppression is not required under Article I, section 9, because a pretrial detainee retains no protected privacy right in a jail cell. According to the state, there was no invasion of a protected privacy interest, so there was no need to obtain a warrant.

We agree with defendant that the warrantless seizure of his manuscript was an unreasonable seizure under Article I, section 9. Under that provision, the warrantless seizure of evidence to be used in a criminal prosecution is "*per se* unreasonable[,]" *State v. Snow*, 247 Or App 497, 504, 268 P3d 802 (2011) (emphasis in original), and may be justified "only if the circumstances come within one of the exceptions to the warrant requirement[,]" *State v. Peterson*, 114 Or App 126, 128, 834 P2d 488, *rev dismissed*, 315 Or 272 (1992). The state bears the burden to prove that an exception to the warrant requirement exists. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991).[4]

In *Hartman*, the defendant was arrested on an outstanding warrant and detained in a holding cell. An officer suspected that the defendant had been involved in an earlier burglary of a restaurant, where a partial boot print was found, and asked another officer to enter defendant's cell, remove defendant's boots, and have the boots photographed for comparison with the boot print at the restaurant. In concluding that the officers had conducted a cognizable seizure, we explained:

> "Both *Tiner* and *Sanders* rest on the theory that an individual *convicted of a felony* forfeits particular rights under the Oregon Constitution, including the right under Article I, section 9, to be free from certain searches and seizures. Here, defendant was not even arrested for a felony, much less convicted of one and, thus, *Tiner* and *Sanders* are inapposite. It follows that the trial court correctly concluded

---

[4] Under the administrative search exception, it is not necessary to obtain a warrant before conducting a reasonable administrative search. However, to be reasonable under Article I, section 9, an administrative search must be conducted for purposes other than criminal law enforcement. *State v. Coleman*, 196 Or App 125, 129, 100 P3d 1085 (2004), *rev den*, 338 Or 16 (2005). The seizure here was not authorized by adopted jail search policies or based on security concerns. Indeed, the state makes no attempt to justify the seizure as the result of a reasonable administrative search and admits that it targeted and seized defendant's manuscript as evidence rather than seeking to obtain a judicial warrant.

that [the officer's] removal of defendant's boots was a sei-
zure under Article I, section 9."

*Hartman,* 238 Or App at 591 (emphasis in original).

The parties urge us to decide whether a pretrial
detainee retains a privacy interest in a jail cell that is pro-
tected by Article I, section 9, against unreasonable searches.
We conclude, however, that we need not decide whether the
search of defendant's jail cell was reasonable, because, under
*Hartman,* the seizure of defendant's manuscript was not. In
*Hartman,* we held that a pretrial detainee retained a pro-
tected interest in the boots that he wore within a jail cell, at
least to the extent that those boots could not be seized with-
out a warrant and used as evidence in a subsequent trial.
Like the defendant in *Hartman,* defendant was a pretrial
detainee, so his incarceration was not a "'*consequence of
[his] conviction*[].'" *Id.* at 590 (quoting *Sanders,* 343 Or at 41)
(emphasis in *Sanders*). And, like the defendant in *Hartman,*
defendant was subjected to a warrantless seizure of a non-
contraband, personal item during a targeted police investi-
gation. Therefore, based on *Hartman,* defendant retained a
protected interest in his manuscript, at least to the extent
that the manuscript could not be seized without a warrant
and subsequently used as evidence in defendant's criminal
trial. Because the state failed to prove that any exception
to the warrant requirement exists, it failed to justify the
seizure, and the trial court erred when it denied defendant's
motion to suppress.

The remaining issue is whether the trial court's
erroneous admission of the manuscript constitutes harm-
less error or requires reversal and remand for a new trial.
"Oregon's constitutional test for affirmance despite error
consists of a single inquiry: Is there little likelihood that the
particular error affected the verdict?" *State v. Davis,* 336
Or 19, 32, 77 P3d 1111 (2003). Our inquiry focuses on "the
possible influence of the error on the verdict rendered[.]" *Id.*

Defendant testified that the manuscript—a
224-page handwritten document entitled "Voices in the
Dark"—was a fictional book that he was writing about a
mafia hit man named "Danny Moris." In the manuscript,
Danny is married to a woman named Trina or Tina, whom

he met through a Nickel advertisement. Tina has a daughter named H from a previous marriage. The characters move from Portland to Medford to Fort Klamath, where H reports Danny for sexual abuse. Danny takes his two boys to Nevada during the ensuing investigation and later moves to Coos Bay.

At trial, the state used the manuscript for three purposes. First, the state used the manuscript in its cross-examination of defendant as an aid to impeach his testimony about the rape charges. Although defendant originally testified that the manuscript was a work of fiction, he admitted during cross-examination that some of the incidents were based on actual events. For example, he acknowledged that he met his wife, Tina, through a Nickel advertisement; that Tina had a child named H from a previous marriage; that he and his family moved from Portland to Medford to Fort Klamath, where H alleged that she had been sexually abused; that he took his two boys to Nevada during the sexual abuse investigation; and that he later moved to Coos Bay. Relatedly, the state submitted the manuscript as substantive evidence, expressly contending that the book was the story of defendant's life. Specifically, during rebuttal argument, the prosecuting attorney argued:

> "The Defendant wants you to believe that this book of his that we've been talking about—and will probably talk some more about here in a bit—is a work of fiction. Yet when I went through it with him over and over and over, it was clear that he's talking about his own life, his own family, in that book. It's not a work of fiction. At least the last half isn't a work of fiction. It's a story of his family life."

Finally, the state used the manuscript as a handwriting sample to identify other documents admitted at trial and relevant to the rape charges, including defendant's written instructions to a fellow inmate and a document that defendant's wife had given to the state. In a portion of that document, entitled "Secrets," defendant wrote, "Some of the thing [H] says are true."

Because the manuscript was so central to the state's rape case and was used to identify other damaging documents, the erroneous admission of the manuscript likely had

a significant influence on the jury, and we cannot conclude that there is little likelihood that the error affected the jury's verdict on defendant's rape charges. However, because evidence of the manuscript pertained only to the rape charges, its wrongful admission likely had little to no influence and was harmless with respect to the other charges.

Reversed and remanded on Counts 9 to 14 and remanded for resentencing in Case No. 09CR0468; otherwise affirmed.