Argued and submitted November 25, 2003, reversed and remanded September 15, respondent's petition for reconsideration filed September 28 allowed by opinion December 8, 2004

See 196 Or App 498, 103 P3d 108 (2004)

STATE OF OREGON,
*Respondent,*

*v.*

JON MICHAEL HANEY,
*Appellant.*

00CR0978MI; A116614

97 P3d 1211

Ernest G. Lannet, Deputy Public Defender, argued the cause for appellant. With him on the brief was David E. Groom, Acting Executive Director, Office of Public Defense Services.

Daniel J. Casey, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Brewer, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Defendant appeals his misdemeanor conviction for driving under the influence of intoxicants (DUII). He assigns error to the denial of his motion to suppress evidence obtained by the state through a warrantless search of his car. After a single-car accident that left defendant—who was the driver of the car—hospitalized, an officer entered defendant's car without a warrant to search for ownership and insurance information. The state maintains that the entry was a legitimate administrative search authorized by ORS 810.460, which requires officers at accident scenes to submit accident reports. Defendant contends that the search was not statutorily authorized and that it failed to comply with various other administrative search requirements. We reverse and remand.

The relevant facts are undisputed. On February 15, 2000, defendant drove his car off of Highway 38, a two-lane road along the Umpqua River, injuring himself and rendering his car inoperable. Officer Macho was dispatched to the accident. The officer directed traffic past the scene, making little or no contact with defendant, who was removed from his car by emergency personnel and transported to a hospital. Macho eventually called for a tow truck to tow defendant's car.[1] While waiting for the tow truck, Macho entered defendant's car to look for insurance and ownership information to assist him in completing an accident report.[2] Macho did not

---

[1] The vehicle did not impede or endanger traffic. The validity of the tow has not been raised as an issue in the case.

[2] According to the trial court, "The [o]fficer testified that before getting into the vehicle he thought a crime had been committed." If the officer entered the car in order to conduct a criminal investigation, the entrance could not be deemed an administrative search, and our inquiry would be at an end. *See Weber v. Oakridge School District 76*, 184 Or App 415, 434, 56 P3d 504 (2002), *rev den*, 335 Or 422 (2003) ("An administrative search is one conducted for a purpose other than the enforcement of laws by means of criminal sanctions." (Internal quotations marks omitted.)). However, the trial court also expressly found that the officer entered the vehicle "in order to obtain information to complete his accident investigation and report." Defendant does not contest that the primary purpose of the statutorily mandated report is civil rather than criminal. In reviewing the denial of a motion to suppress, we defer to the trial court's factual findings if there is evidence in the record to support them. *State v. Woodall*, 181 Or App 213, 217, 45 P3d 484 (2002). Because defendant has not argued that the search was for criminal investigation purposes, we will assume that the trial court found that the investigation was conducted for non-criminal-enforcement purposes.

obtain a warrant before conducting the search. During the search, he came across several bottles of prescription medicine in the glove compartment, along with paperwork indicating that defendant was on a drug-related "felony probation." The prescription drugs and paperwork were seized and were used in a subsequent criminal investigation.

Based on the evidence obtained during the search and subsequent investigation, the Douglas County District Attorney's Office filed an information charging defendant with DUII. Defendant moved to suppress all evidence obtained through the search and seizure. He also moved to suppress, as fruit of the allegedly unlawful search, all evidence obtained from the subsequent investigation. The trial court held a suppression hearing and denied defendant's motion. Defendant subsequently entered a conditional guilty plea pursuant to ORS 135.335(3), reserving the right to appeal the trial court's denial of the motion to suppress.

On appeal, defendant assigns error to the trial court's denial of his suppression motion, arguing again that the search of his car did not fall within any recognized exception to the warrant requirement; that the search therefore violated Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution;[3] and that all evidence obtained directly or indirectly from the search should therefore be suppressed. The state responds that the officer entered the car to conduct a valid administrative search as authorized by ORS 810.460. Defendant disagrees, arguing (1) that the statute upon which the state relies does not explicitly or implicitly authorize searches, (2) that the search was not conducted in accordance with a systematic policy that adequately limited officer discretion, and

_____

[3] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment to the United States Constitution provides, as relevant:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause * * *."

(3) that the search was not reasonably necessary to fulfill the duties created by the legislature.

Ⅰ In resolving the issues framed by the parties, "we are bound by the trial court's determination of what actually happened. Our function is limited to determining whether legal principles were correctly applied." *State v. Davis*, 295 Or 227, 238, 666 P2d 802 (1983). "We review the denial of a motion to suppress for errors of law, deferring to the trial court's findings of historical fact when there is evidence in the record to support them." *State v. Woodall*, 181 Or App 213, 217, 45 P3d 484 (2002) (citing *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993)). With those standards in mind, we turn to the legal questions raised by the parties.

ⅠⅠ Macho's entrance into defendant's car constituted a search under Article I, section 9, of the Oregon Constitution. A search is any activity that, "if engaged in wholly at the discretion of the government, will significantly impair [a person's] freedom from scrutiny." *State v. Campbell*, 306 Or 157, 171, 759 P2d 1040 (1988). Even minimal entries into private vehicles have been recognized as searches implicating the protections of Article I, section 9. *See State v. Rhodes*, 315 Or 191, 196-97, 843 P2d 927 (1992) (completely opening a truck door already a few inches open constitutes a search); *State v. Hicks*, 89 Or App 540, 543-45, 749 P2d 1221 (1988) (inserting head through open car window constitutes search).

Ⅰ A search undertaken without a warrant violates Article I, section 9, unless it comes within an exception to the warrant requirement. *E.g., Davis*, 295 Or at 237. Here, the only exception to the warrant requirement on which the state relies is the "administrative search" exception. Therefore, if the search was not a valid administrative search, then the case must be remanded with instructions to grant defendant's suppression motion.

ⅠⅠ An administrative search is a search authorized by politically accountable officials and conducted pursuant to administrative regulations for a purpose other than the enforcement of criminal laws. *State v. Anderson*, 304 Or 139, 141, 743 P2d 715 (1987). Such a search must satisfy at least three requirements in order to meet the "reasonableness" standard of Article I, section 9. First, the search must be

authorized by a politically accountable lawmaking body. *Weber v. Oakridge School District 76*, 184 Or App 415, 435, 56 P3d 504 (2002), *rev den*, 335 Or 422 (2003). Second, its design and administration must permit no discretion on the part of the law enforcement officer. *Id.* at 436. Third, the search's scope must reasonably relate to its purpose. *Id.* at 437.

■       The state bears the burden of proving that each of the three requirements was satisfied. *See, e.g., id.* at 425 (in a criminal case, the burden is on the state to establish the lawfulness of a warrantless administrative search). We conclude that the state failed to meet that burden with regard to the second of the three requirements, so we do not address whether it met its burden with regard to the other requirements.

The state contends that defendant failed to preserve an argument about whether it met its burden to establish that there was a policy that was designed and systematically administered to ensure that officers who conducted searches for information to complete the accident report required by ORS 810.460 had no discretion in conducting the searches. We disagree.

■       Defendant did not raise an issue about the policy under which administrative searches are conducted under ORS 810.460 because the state did not contend that it had conducted such a search. As the trial court explained in its memorandum opinion, "The only argument the State makes for [the] lawfulness [of the search] is the Community Care Taking function of police officers." At the conclusion of the suppression hearing, in which the state relied solely on a community-caretaking theory, the court instructed both parties to prepare supplemental memoranda on the issue. In its memorandum, the state said:

> "Upon further limited review of the statutory and constitutional issues in this case, [the state has] been unable to find Oregon caselaw or legislative history that supports justifying the search in this case under the 'Community Caretaking' statute.

"[The state] must therefore ask the court to consider suppression based solely on the testimony offered by the state's witness at the suppression hearing."

The first time that an administrative search theory was raised in the case was when the trial court relied on that theory in its memorandum opinion to deny the motion to suppress. Because the theory was interjected into the case by the court after the conclusion of the suppression hearing, defendant was not required to challenge the adequacy of the record to establish the requirements for a lawful administrative search policy under ORS 810.460 in order to raise the issue on appeal.

It is not clear from the evidence in the record that the police department had adopted a policy to conduct searches under ORS 810.640. According to the agreed narrative statement, Macho testified that "it was department policy to get certain information to include in the Department of Motor Vehicles (DMV) report [and that] he entered the vehicle to obtain information for the accident report." However, he did not testify that it was department policy to enter vehicles under such circumstances or that it was even his own policy to do so. He made no reference to a DMV form that the state cites as support for the search, and he did not suggest that any other form guided the scope or nature of his search. Neither the statute nor the DMV form, for its part, suggests that an officer can or should conduct *searches* in order to obtain the desired information.[4]

■ Even if it were shown that the state had adopted some policy authorizing searches, the state would have the additional burden of showing that the policy adequately limited officer discretion. Unacceptably broad discretion can take a variety of forms:

" 'Standardized criteria or an established routine governing inventory searches [*sic*] must limit an officer's discretion in

_____

[4] *Cf. State v. Bean*, 150 Or App 223, 226 n 4, 946 P2d 292 (1997), *rev den*, 327 Or 448 (1998) (upholding inventory conducted pursuant to authorization in the Gresham City Code, which described in detail the circumstances in which custodial inventories were to occur and the scope of such inventories).

two ways. First it must limit the officer's discretion regarding *whether to search a seized vehicle*. Second, the pre-existing criteria or routine must limit an officer's discretion regarding *the scope of an inventory search* [*sic*], particularly with respect to the treatment of closed containers.' "

*State v. Willhite*, 110 Or App 567, 573, 824 P2d 419 (1992) (quoting *United States v. Salmon*, 944 F2d 1106, 1120 (3d Cir 1991)) (emphasis added; bracketed material in *Willhite*).[5]

■  The state emphasizes that ORS 810.460 requires a report to be submitted after *every* accident involving an injury or death. An officer's discretion is therefore limited in the sense that the officer cannot arbitrarily decide to prepare reports for some accidents and not for others. *See Willhite*, 110 Or App at 573 ("The trial court correctly concluded that the Tigard police department policy adequately eliminates individual discretion about *whether* to inventory a vehicle, because it specifies that *every* towed vehicle must be inventoried." (Emphasis in original.)) The problem with that argument is that it focuses entirely on the lack of discretion about whether to complete a report. It does not address the discretion, or lack thereof, about how to obtain the information for the report. Neither the statute nor the DMV form limits officer discretion about whether to conduct searches in order to prepare accident reports.

There also is no evidence of guidelines limiting officer discretion regarding the *scope* of searches. *See id.* at 570 ("Approval of an inventory policy provides no general license for the police to examine all the contents of * * * automobiles." (Internal quotation marks omitted.)). Assuming the existence of a policy to search for information on vehicle ownership and insurance, it is not clear how far such searches are to reach: Into glove compartments? Into closed containers within glove compartments? Into trunks? Purses? Briefcases? Because there are no explicit guidelines, it is not even clear if searches are limited to vehicles involved in accidents. If a search of a car were unavailing, could the officer make a warrantless entry into the driver's home in order to obtain vehicle ownership information from household files? The

---

[5] As reflected in the use of *sic* in this quotation, inventories are not searches, so it is incorrect to refer to them as "inventory searches."

logic of the state's argument, taken to its natural conclusion, would appear to allow just such a result. Nothing in the language of ORS 810.460 or the DMV form limits officers to conducting their investigations at the accident scene itself.

Relying again on the DMV accident report form, the state stresses the fact that the form is finite in scope; it has spaces for driver identification information, vehicle ownership, insurance, weather conditions and other accident circumstances, presence or absence of seatbelts, and a few other matters. Relying on *State v. Boone*, the state argues that the finitude of the form operates to limit officer discretion regarding the scope of a search. 327 Or 307, 309-10, 315, 959 P2d 76 (1998) (inventory policy satisfied requirement that it be systematically administered where it required that searches be conducted using a department inventory checklist). The state's reliance on *Boone* is misplaced. The purpose of the checklist in *Boone* was to "remind the officer of all the different areas of a vehicle he is required to search pursuant to the inventory search [*sic*] policy." *Id.* at 310 (internal quotation marks omitted). In other words, it set guidelines for the *physical scope* of the officers' search. Neither ORS 810.460 nor the DMV form imposes such limits on the physical scope of searches. Because documents such as titles and insurance are thin and susceptible to folding, an officer could conceivably rationalize a search for those documents anywhere within or without a vehicle. Without clear guidelines limiting officer discretion, investigations for such documentary evidence easily devolve into exactly the sort of "general license for the police to examine all the contents of * * * automobiles" that we have previously sought to avoid. *Willhite*, 110 Or App at 570 (internal quotations marks omitted).

For all the above reasons, we conclude that the relevant search policy, if one existed, did not adequately limit officer discretion. Because it did not, we conclude that the trial court erred in upholding the warrantless search of defendant's car as an administrative search. Because the state advances no other basis to uphold the search, we conclude that the court erred in denying defendant's motion to suppress.

Reversed and remanded.