Argued and submitted May 26, affirmed November 10, 2004, petition for review
denied January 25, 2005 (338 Or 16)

STATE OF OREGON,
*Respondent,*

*v.*

SAGE WOOD COLEMAN,
*Appellant.*

01CR1433; A117104

100 P3d 1085

Susan F. Drake, Deputy Defender, argued the cause for appellant. With her on the brief was Peter A. Ozanne, Executive Director, Office of Public Defense Services.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals from a judgment of conviction for possession of a controlled substance. ORS 475.992. He assigns error to the trial court's denial of his motion to suppress evidence obtained when police conducted a warrantless search of his person while he was temporarily held in a "controlled waiting room" of a local police station. We affirm.

The relevant facts are not in dispute. On June 7, 2001, Sergeant King of the Coos Bay Police Department received a report of a stolen car. Shortly thereafter, King saw defendant get out of a car matching the description of the reported stolen car. King arrested defendant for unlawful use of a motor vehicle and transported defendant to the Coos Bay police station.

The Coos Bay police station has no jail facilities. Instead, there are two controlled waiting rooms designed for the temporary detention of juveniles and other persons in custody. The controlled waiting rooms are secure areas and can be opened only with a key from the outside. King placed defendant in a controlled waiting room to await an interview by the case officer, Hatzel.

Before placing defendant in the controlled waiting room, King searched defendant pursuant to a department administrative policy. That policy states, in relevant part:

"The controlled waiting rooms are to be used as a last resort for juveniles or other persons to be interviewed at the police department. No person shall be held in a controlled waiting room for more than three (3) hours.

"A.    Whenever a person is placed in a controlled waiting room, the room will be inspected for unauthorized items, prior damage and old graffiti.

"B.    The person placed into the room shall be thoroughly searched prior to placement into the room. The following items must be removed from the person prior to placement: cigarettes, matches, lighters, pens, pencils, contents of all pockets, belts, footgear, and any other items that could be used to cause damage to the individual or the waiting room.

"The individual's personal property is to be placed into a paper bag and made available for transport with the person."

During the search, King found two bindles of what he believed to be controlled substances. A laboratory analysis determined that the bindles contained methamphetamine and marijuana seeds. Based on that evidence, defendant was charged with possession of a controlled substance.

■     Before trial, defendant moved to suppress the controlled substances found during the search at the police station. He argued that the search did not fit any of the recognized exceptions to the warrant requirement under Article I, section 9, of the Oregon Constitution. The trial court concluded that the search was lawful, reasoning that:

"I find it significant [that] * * * State's Exhibit No. 1 appears to be a policy in place with the Coos Bay Police Department concerning this controlled waiting room.

"From the testimony it's clear to me that they don't exercise discretion on this. They put all people in that controlled waiting room that are being interviewed * * * and they follow this practice across the board.

"* * * * *

"[T]hat search was made pursuant to what I consider to be a practice or procedure that was a regular police procedure of the Coos Bay Police Department that was in effect and that in this case was followed. And pursuant to that procedure, the officers did discover the drugs pursuant to that search or as part of that search."

Whether a search complies with Article I, section 9, depends largely on the facts of each case. *State v. Warner*, 284 Or 147, 149, 585 P2d 681 (1978). We are bound by the trial court's findings of fact if they are supported by constitutionally sufficient evidence in the record. *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). We review the trial court's legal conclusions based on those findings for legal error. *State v. Davis*, 295 Or 227, 238, 666 P2d 802 (1983). Generally, a search is considered unreasonable unless it has been authorized by a valid search warrant. *State v. Atkinson*, 298 Or 1, 4, 688 P2d 832 (1984). A warrantless search is reasonable

under Article I, section 9, if it falls into one of the recognized exceptions to the warrant requirement. *State v. Paulson*, 313 Or 346, 351, 833 P2d 1278 (1992).

■ Here, defendant argues that the search conducted before he was placed in the controlled waiting room does not fall under any of the prescribed exceptions to the search warrant requirement. The state counters that the search at issue fits a number of recognized exceptions to the warrant requirement, including the administrative search, community caretaking, and search incident to arrest exceptions. We agree with the state that the search was a valid administrative search, and we therefore begin and end our discussion there.

■ One of the recognized exceptions to the warrant requirement is the administrative search exception. *State v. Haney*, 195 Or App 273, 277, 97 P3d 1211 (2004). A valid administrative search must be conducted for purposes other than law enforcement, pursuant to a policy that is authorized by a politically accountable lawmaking body. *Id*. at 277-78. Furthermore, in order to be valid, such a policy must limit the discretion of those responsible for conducting the search and the scope of the search authorized must reasonably relate to its purpose. *Id*. at 278.

In this case, defendant does not argue that the department's policy was not authorized by a politically accountable body. He does argue that the policy is "too broad and [grants] officers unlimited discretion beyond what [is] reasonably necessary" to effectuate the policy's purpose. Defendant contends that the purpose of the policy is investigative because it authorizes a complete search of any person who will be placed in the controlled waiting room. Defendant further contends that the scope of the search is too broad because it authorizes the same search for both civil and criminal detainees; according to defendant, an administrative search of a civil detainee must be less intrusive than that of a criminal detainee.

The state argues that the purpose of the search is to protect the safety of persons placed in the controlled waiting room and to ensure that the facility is not damaged. The state

further argues that the scope of the search thus authorized is properly tailored to meet that goal.

We agree with the state. The scope of the policy is focused on safety concerns. By its terms, it directs the removal of "items that could be used to cause damage to the individual or the waiting room." Harris testified without contradiction that the purpose of searches pursuant to the policy is to prevent detainees from hurting themselves with the items that they may have in their possession. That searches authorized by the policy apply to persons held for both criminal and civil matters bears out the fact that it is directed primarily at safety, not criminal investigation, concerns.

The type of search authorized by the policy is limited—more limited than the typical automobile inventory that permits the police to open closed containers designed to hold valuables. The policy in this case does not authorize police to open closed containers. Instead, it authorizes them to take from an individual items that could be used to injure the person in custody or to damage the facility and then to place the items in a bag and make them available for transport with the individual.

Discretion under the policy is limited. "Every person" placed in the controlled waiting room must be searched. And only the person, not, as we have noted, closed containers the person may possess, may be searched. Police are required to remove cigarettes, matches, lighters, pens, pencils, contents of pockets, belts, footgear, "and any other items that could be used to cause damage to the individual or the waiting room."

In short, the search authorized by the policy has purposes other than criminal investigation, entails limited discretion on the part of those conducting it, and is reasonable in scope in relation to its purposes. *Cf. State v. Johnson*, 177 Or App 244, 251, 35 P3d 1024 (2001) (authority of jail to inventory property does not justify criminal investigation). The trial court correctly concluded that the search was conducted pursuant to a valid administrative policy and therefore did not err in denying defendant's motion to suppress.

Affirmed.