Argued and submitted March 15, reversed and remanded August 31, 2011

In the Matter of B. A. H.,
a Youth.

STATE OF OREGON,
*Appellant,*

*v.*

B. A. H.,
*Respondent.*

Petition Number 090253JA

Jackson County Circuit Court
090253J; A144302

263 P3d 1046

Paul L. Smith, Assistant Attorney General, argued the cause for appellant. On the brief were John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Anna M. Joyce, Assistant Attorney General.

Angela Sherbo argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

In this juvenile delinquency case, the state alleges that youth is within the jurisdiction of the juvenile court for committing acts that, if committed by an adult, would constitute possession of a controlled substance. The juvenile court granted the youth's pretrial motion to suppress evidence seized from him during a warrantless search at his high school, and the state appeals. ORS 419A.200(1). We conclude that the juvenile court erred in suppressing the evidence because the search fell within the exception to the warrant requirement created by the Supreme Court in *State ex rel Juv. Dept. v. M. A. D.*, 348 Or 381, 233 P3d 437 (2010). We therefore reverse.

The facts adduced at the hearing on the motion to suppress are undisputed. A teacher found youth to be in possession of a cigarette lighter in the school bathroom and brought him to the office of a school official, Murdoch, who testified that his position was "disciplinarian." Because a lighter is contraband under the school's rules, and because youth had a prior record of two tobacco violations and at least one drug violation, Murdoch suspected that youth possessed other contraband, in particular cigarettes or drugs, and he decided that he would search youth. A second "disciplinarian" and a uniformed, armed police officer were also present in the office. They observed the interaction between Murdoch and youth but did not participate. Murdoch did not touch youth; rather, he conducted the search by asking him to empty his pockets, pull up his pant legs, and open the sleeves of his jacket. The second disciplinarian noticed that youth appeared to be concealing something in his sleeve. When asked about the object, youth removed a small container. The white powdery substance in the container was subsequently determined to be methadone. Youth was charged with possession of a controlled substance.

At the hearing on youth's motion to suppress, the state argued that Murdoch's search was an administrative search conducted pursuant to the school district's administrative search policy. The state offered the school district's policy into evidence. The policy, which had been adopted by the school board, states that the board's purpose is to

"ensure a learning environment which protects the health, safety and welfare of students and staff. To assist the Board in attaining these goals, district officials may, subject to the requirements below, search a student's person and property, including property assigned by the district for the student's use. Such searches may be conducted at any time on district property or when the student is under the jurisdiction of the district at school-sponsored activities."

The policy states among other requirements that the district official conducting the search of a student "shall have individualized, 'reasonable suspicion' to believe evidence of a violation of law, Board policy, administrative regulation or school rule is present in a particular place."

In its written order suppressing the evidence, the juvenile court held that Murdoch searched youth pursuant to a valid school administrative search, but that the fruits of the search could not be used in a criminal prosecution. The court therefore suppressed the evidence, and the state appeals.

On appeal, the state now contends that Murdoch's search of youth was justified either as an administrative search or, as in *M. A. D.*, under an exception to the warrant requirement for searches conducted by school officials based on reasonable suspicion that youth was in possession of drugs or other dangerous items. We address those arguments in turn.

An administrative search is a recognized exception to the warrant requirement. In general, a search qualifies for the exception if it is conducted for a purpose other than law enforcement, *State v. Anderson*, 304 Or 139, 141, 743 P2d 715 (1987), pursuant to a policy that is authorized by a politically accountable lawmaking body, *Nelson v. Lane County*, 304 Or 97, 106, 743 P2d 692 (1987), if the policy eliminates the discretion of those responsible for conducting the search. *State v. Atkinson*, 298 Or 1, 8-10, 688 P2d 832 (1984); *State v. Coleman*, 196 Or App 125, 129, 100 P3d 1085 (2004), *rev den*, 338 Or 16 (2005). Typical examples include health and safety inspections and certain inventory searches of lawfully seized automobiles. In the present case, the parties agree, as do we, that the school's student search policy was promulgated by a

politically accountable body (the local school board). The parties also agree that the purpose of the search was not law enforcement. We are not so sure. Not only was the search conducted in the presence of an armed and uniformed police officer; it was also pursuant to a policy that included among its objectives the seizure of "evidence of an *illegal* or prohibited act" or a "violation of law," including "*illegal* or prohibited items." (Emphases added.)

Other aspects of the search, in particular whether it meets the third criterion—no discretion in the application of the policy—are also problematic. Youth contends that the reasonable suspicion standard adopted by the school board deviates from the requirement that the search involve no exercise of discretion unless the policy also requires, for example, that officials search *all* students about whom they have a reasonable suspicion, or only students who are randomly chosen. The state responds that the Supreme Court has previously weighed in on this issue and has held that an administrative search policy that requires reasonable suspicion on the part of the searching authority is consistent with the requirements of *Atkinson*. The court held in *AFSCME Local 2623 v. Dept. of Corrections*, 315 Or 74, 843 P2d 409 (1992), that a reasonable suspicion standard contained within an administrative search policy for prison employees, as set forth in department administrative rules, did not violate the employees' rights under Article I, section 9. The court explained that the challenged administrative rules "more than adequately rein in executive discretion by establishing a fully described administrative program that is triggered by individualized suspicion" and, further, that the administrative rules' "reasonable suspicion" standard "sufficiently limit[s] the exercise of discretion in their enforcement under the rule of [*Atkinson* and *Nelson*]." 315 Or at 83.

*AFSCME Local 2623* is of limited relevance here. In that case—a facial challenge to a rule under ORS 183.400—the court carefully circumscribed the scope of its review. *Id.* at 79 ("We emphasize at the outset the limited scope of the Court of Appeals' review (and ours) under ORS 183.400."). The rule itself did not authorize the department to search employees; it authorized the department only to *request consent to search*, and reserved for another day the question of

visiting consequences on employees who refused—and, necessarily, on those who consented and were found in possession of contraband: "Our rulings today are limited to the specific theories advanced by petitioners. We do not decide, for example, whether it would be legally permissible to discipline an employee for refusing to consent to a search." *Id.* at 83. Further, if *AFSCME Local 2623* were as broadly applicable as the state contends, it would expand the scope of the administrative search exception beyond all logical boundaries. The legislature or other politically accountable body could authorize agencies, including law enforcement agencies, to promulgate rules for the purpose of ensuring the health and safety of citizens by allowing searches on reasonable suspicion for harmful *or illegal* items or substances. We are confident that the Supreme Court did not intend in *AFSCME Local 2623* to work such a radical change on decades of well-settled law under Article I, section 9.

In the present case, however, we need not decide whether to extend *AFSCME Local 2623* beyond its own facts.[1] That is so because we agree with the state that *M. A. D.* requires reversal.

In support of its ruling suppressing the evidence, the juvenile court cited this court's opinion in *State ex rel Juv. Dept. v. M. A. D.*, 226 Or App 21, 202 P3d 249 (2009), *rev'd*, 348 Or 381, 233 P3d 437 (2010), which had been decided nine months before and which was then under advisement in the Supreme Court. *M. A. D.* involved the search of a youth by school officials after the officials heard a report by another student that the youth had been seen in possession of, and selling, marijuana on school grounds. In that case, "the state [did] not rely on well-established exceptions to the warrant requirement based on the school district's administrative policy," and we expressly did not consider whether the search might lawfully have been carried out as an administrative search or under some other exception to the warrant requirement. 226 Or App at 33. We held that, absent an exception to

---

[1] Neither this court nor the Supreme Court has followed *AFSCME Local 2623* in holding that a reasonable suspicion requirement sufficiently meets the "no discretion" criterion for an administrative search. As the state recognized at oral argument, *AFSCME Local 2623* is an "anomaly."

the warrant requirement, Article I, section 9, of the Oregon Constitution required that a warrantless search of a youth be supported by probable cause, which the state conceded was lacking. *Id.* The juvenile court apparently concluded that, even in the context of a valid administrative search, our opinion in *M. A. D.* would require suppression in the absence of probable cause to search in order to satisfy the requirements of Article I, section 9.[2]

Subsequent to the hearing on the motion to suppress, the Supreme Court reversed this court in *M. A. D.* The court accepted, with some qualifications, the state's argument on review that "the school context is sufficiently different from the setting in which ordinary police-citizen interactions occur to justify an exception to the warrant requirement in certain circumstances," and that the less exacting, "reasonable suspicion" standard should apply. 348 Or at 391. The court explained that, in the school setting, because of the responsibility of school employees to provide a safe environment for students and employees and the special duty arising from the relationship between educators and the children entrusted to their care, an exception analogous to the officer-safety exception to the warrant requirement applies "in certain circumstances." *Id.* at 391.

"[W]hen school officials perceive there to be an immediate threat to student or staff safety at a school, they must be able to take prompt, reasonable steps to remove that threat. As with an officer-safety search, when a school official develops a 'reasonable suspicion,' based on 'specific and articulable facts,' that a particular individual on school property either personally possesses or is in the possession of some item that poses an 'immediate threat' to the safety of the student, the official, or others at the school, the school official 'must be allowed considerable latitude to take safety precautions.' * * * Moreover, as this court has noted with respect to an officer's judgment in that context, it is not our function to 'uncharitably second-guess' the considered protective actions taken by school officials."

---

[2] We express no opinion as to whether the juvenile court's reasoning was correct.

*Id.* at 392-93 (citations omitted) (quoting *State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987)). Further, the court noted that a student in possession of drugs amounted, *per se*, to a safety threat: "[T]he reasonable suspicion standard should apply to a search, *like the one here, for illegal drugs* that is conducted on school property by school officials acting in their official capacity." *Id.* at 393 (emphasis added).

The court cautioned, however, that "[t]here are important limits on the kinds of searches that may be permitted under this approach." *Id.*

> "Consistently with the standards that we have developed in the officer-safety cases, a school official may not rely on generalizations about suspected drug use or on information that is not specific or current. Moreover, we specifically reject the state's request that we adopt, in this case, a general rule that *all* school searches should be subject to a 'reasonable suspicion' standard. * * * This case involves a present threat to student safety and a search by a school official acting in his official capacity and in furtherance of his responsibility to protect students and staff; our holding is based on those circumstances."

*Id.* at 393-94.

Warrantless searches of students without probable cause or some other exception to the warrant requirement such as consent, then, appear to be permissible when a school official reasonably suspects, based on specific and articulable facts, that the student is in possession of something that poses an immediate threat to the student or others, including illegal drugs such as marijuana. Such a search is not permissible based on generalizations about drug use or on stale information. Under these standards, the search of youth in this case did not violate his rights under Article I, section 9, as construed by the Supreme Court in *M. A. D.* The official who searched him, Murdoch, knew that youth was apprehended in a bathroom with a cigarette lighter. Murdoch also knew that youth had a history of drug and tobacco use. The association between possessing a lighter and possessing either marijuana or tobacco is not speculative or a generalization. Youth was caught with the lighter within minutes of the search. Murdoch, then, had reasonable suspicion of a

threat to safety that was at least as immediate and compelling as the suspicion in *M. A. D.* Under that case, the search was lawful, and the evidence should not have been suppressed.[3]

Reversed and remanded.

---

[3] Youth argues that we should not address the state's argument that *M. A. D.* created a new exception to the warrant requirement because the state did not make that argument to the juvenile court. At the time of the hearing on the motion to suppress, however, the Supreme Court had not decided *M. A. D.*, and this court had expressly rejected the state's "new exception" argument in our *M. A. D.* decision. We decline to penalize the state for not arguing to the court that it should not follow one of our opinions that has not been reversed.