Argued and submitted February 16, affirmed November 9, 2011

In the Matter of
M. W. H., a Youth.

STATE OF OREGON,
*Petitioner-Respondent,*

*v.*

M. W. H.,
*Appellant.*

Jackson County Circuit Court
080643J;
Petition Number 080643JA;
A142382

267 P3d 165

Megan L. Jacquot argued the cause and filed the brief for appellant.

Douglas F. Zier, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and David B. Thompson, Interim Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Youth was adjudicated in this juvenile delinquency proceeding for committing an act that, if committed by an adult, would constitute possession of a concealed weapon (a small dagger) at school. *See* ORS 166.240. He appeals, assigning error to the denial of his motion to suppress evidence, including the dagger, which was discovered after a school official "ask[ed]" him to empty his pockets. For the reasons that follow, under the operative standard of review, we sustain the juvenile court's determination that youth's response to the school official's request was consensual. Accordingly, and without determining whether the school official's actions in this case comported with the requisites of *State ex rel Juv. Dept. v. M. A. D.*, 348 Or 381, 233 P3d 437 (2010), we affirm.[1]

We recount the material facts consistently with the trial court's findings, including its explicit determination that the testimony of the school official, Stiles, was credible and that, with one critical exception, youth's account was not credible.[2] On September 24, 2008, youth, a student at Ashland High School, was sent to the office of the Dean of Students, Stiles, because he had made an "inappropriate

---

[1] Our analysis and disposition obviates any need to determine whether the school official acted in conformity with a lawfully promulgated administrative search policy. *Accord State v. B. A. H.*, 245 Or App 203, 206-08, 263 P3d 1046 (2011).

[2] Although youth's brief on appeal asserts that our standard of review is *de novo* pursuant to ORS 419A.200(6)(b), the operative notice of appeal in this matter was filed after June 4, 2009, the effective date of the 2009 amendments to ORS 19.415, which make *de novo* review discretionary in a case such as this one. Or Laws 2009, ch 231, §§ 2, 3. Further, we note that, in 2009, the legislature also amended ORS 419A.200(6) to eliminate the reference to a *de novo* standard of review in juvenile cases. Or Laws 2009, ch 231, § 6. That amendment also applies to this case. Or Laws 2009, ch 231, § 10.

Although this court, "acting in its sole discretion, may try the cause anew upon the record," ORS 19.415(3)(b), we will exercise our discretion to do so "only in exceptional cases," ORAP 5.40(8)(c). Further, ORAP 5.40(8)(a) provides that, where an appellant "seeks to have the court exercise" its discretion to review *de novo*, "the appellant shall concisely state the reasons why the court should do so." Here, youth did not do so. Accordingly, and because we do not view this as an "exceptional case," we decline to exercise our discretion to review *de novo* and, instead, are bound by the trial court's findings of historical fact that are supported by any evidence in the record. *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010).

comment" in a morning class and because his teacher suspected that he was under the influence of marijuana. Stiles noticed that youth's eyes were "kind of red and droopy," "squinty and * * * bloodshot," that "he was having some trouble forming answers," and that he was "kind of slumped down" as he sat during their conversation. Based on her experience with students who had been under the influence of illicit substances, her observations, and what Stiles described as "a great difference in [youth's] demeanor and how he was interacting" in contrast to previous conversations with youth when he had been (she believed) "completely sober," Stiles "suspected that [youth] had been smoking pot."

Stiles asked youth if he had been smoking marijuana, and youth replied that he "had not been smoking that morning, but he had been smoking the night before." At that point, Stiles told youth, "I am going to have to ask you to empty your pockets." Youth then placed the contents of his pockets—including "a lighter, an Altoid tin [with] a few marijuana flakes in it, and a double-edged dagger"—on Stiles's desk.

As of September 24, 2008, Ashland High School policies prohibited possession of marijuana and weapons at school. Further, as of that time, Ashland School District 5, through its school board, had adopted policies pertaining to "student searches." As pertinent here, those policies provided that district officials who have "individualized, 'reasonable suspicion' to believe [that] evidence of a violation of law, Board policy, administrative regulation or school rule" is in a student's possession may search "a student's person or property."

In October 2008, the state filed a delinquency petition alleging, in part, that youth had committed an act that, if committed by an adult, would constitute possession of a concealed weapon.[3] Youth moved to suppress the evidence obtained as a result of his encounter with Stiles, alleging that Stiles had effected a warrantless search of youth's person in violation of Article I, section 9, of the Oregon Constitution

---

[3] The delinquency petition also alleged that youth had engaged in conduct that, if committed by an adult, would constitute unlawful possession of marijuana (a violation). That allegation was ultimately dismissed and is not at issue on appeal.

and the Fourth Amendment to the United States Constitution.[4] In so contending, youth asserted that he did not consent to the search and that the search was not justified by probable cause with exigent circumstances.[5]

In the ensuing hearing, Stiles testified as to the facts recounted above. Youth also testified, giving apparently evasive responses on some matters and sometimes flatly contradictory testimony as to others. Of particular pertinence to our disposition, youth, on direct examination by his own counsel, testified as follows:

"[DEFENSE COUNSEL]:   * * * How did she request that you empty your pockets out?

"[YOUTH]:   She told me to empty out my pockets.

"[DEFENSE COUNSEL]:   Okay. Did you feel like you had any choice?

---

[4] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

The Fourth Amendment provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Although youth's motion to suppress included a single reference to the United States Constitution, his supporting memorandum did not refer to any federal constitutional authority, including *New Jersey v. T. L. O.*, 469 US 325, 105 S Ct 733, 83 L Ed 2d 720 (1985), and did not purport to advance any analysis distinct from that under the Oregon constitutional authority that he presented. Further, in oral argument on the motion, youth's counsel referred exclusively to Article I, section 9.

[5] The juvenile court's denial of suppression and the youth's consequent adjudication antedated the Supreme Court's opinion in *M. A. D.* by approximately a year. Indeed, the court's opinion in *M. A. D.* issued after the filing of youth's brief on appeal but before oral argument of this matter. Accordingly, youth's arguments to the trial court in support of suppression, and the trial court's resolution of those contentions, was not framed in terms of the formulation prescribed by the Supreme Court in *M. A. D.*, *viz.*, that a school search is constitutionally justified under Article I, section 9, "when a school official develops a 'reasonable suspicion,' based on 'specific and articulable facts,' that a particular individual on school property either personally poses or is in the possession of some item that poses an 'immediate threat' to the safety of the student, the official, or others at the school[.]" 348 Or at 392-93.

"[YOUTH]:   Yes.

"[DEFENSE COUNSEL]:   You felt like you had a choice? Do you—so you felt like you didn't have to?

"[YOUTH]:   Mm. Hm. (Affirmative.)

"[DEFENSE COUNSEL]:   So you are saying that you voluntarily emptied out your pockets?

"[YOUTH]:   I did not.

"[DEFENSE COUNSEL]:   Okay. So you did not voluntarily empty out your pockets. The question is whether you agreed to that, where you voluntarily consented.

"[YOUTH]:   Mm. Hm. (Affirmative.)

"[DEFENSE COUNSEL]:   Or whether or not you felt like you had to. That is the question. Which is it?

"THE COURT:   But I don't know what you are not agreeing to.

"[YOUTH]:   I did not.

"THE COURT:   You did not what?

"[YOUTH]:   Did not voluntarily empty out my pockets. I wanted her to call my dad first, but she did not.

"[DEFENSE COUNSEL]:   So did you feel like you had a choice or not?

"[YOUTH]:   No.

"[DEFENSE COUNSEL]:   Okay. I think the Court gets it. I'm done."

The court ultimately denied suppression, determining that youth had consented to emptying his pockets and, alternatively, that the search was justified by probable cause and exigent circumstances. In so determining, the court began by rendering findings regarding the witnesses' credibility:

"[T]he only credible evidence comes from [Stiles], because the [youth] in this case got up here and changed his story numerous times. I don't know if he is trying to—I don't know what he is doing. I don't know if he is trying to satisfy everybody by answering the way he thinks they are asking the question or what is going on. Once I asked him—I mean

he told his own attorney he thought he had a choice and then he backtracked when he realized that wasn't the right answer. * * * So I don't think he is at all credible, and it is too bad, because—you know—it is really important to tell the truth, and walking down the lying path doesn't help anybody very much. So it doesn't help the case. So that leaves me with * * * Stiles' testimony. And here is my reasoning. First of all amongst the things that he said was that he thought he had a choice. I sort of tend to believe that, but leaving that aside, I don't think his will was overborne in this case. I think he did agree to empty his pockets."

The court then explained why, in its view, Stiles's observations, coupled with her experiences, supported probable cause for possession of marijuana.[6] The court concluded its determination as follows:

"So not only am I finding that he consented to the search, I am also finding that she had probable cause, 'cause he was clearly under the influence at the time, and there were exigent circumstances as outlined by the prosecution. The administrative issue I think is an interesting one, but I really haven't been briefed on that enough that I feel very comfortable making a decision in that case. I feel I have enough evidence, so I am not making a finding one way or the other in that regard. I am finding, however, that otherwise the motion is denied based on probable cause—based on consent, probable cause and exigent circumstances all combined."

The court subsequently entered the delinquency judgment challenged on appeal.

Youth now reiterates his contentions before the trial court, with the exception of retrofitting his "no probable cause" contention to conform to the "reasonable suspicion" construct enunciated in *M. A. D. See* 246 Or App at 425 n 5. Youth also, for the first time, invokes *New Jersey v. T. L. O.*, 469 US 325, 105 S Ct 733, 83 L Ed 2d 720 (1985), in support

---

[6] As noted previously, at the time the juvenile court ruled on the suppression motion, the Supreme Court had not yet issued its opinion in *M. A. D.* At that time, the controlling authority was our decision in *State ex rel Juv. Dept. v. M. A. D.*, 226 Or App 21, 27, 30, 202 P3d 249 (2009) (holding that, under Article I, section 9, the "probable cause plus exigent circumstances" exception to the warrant requirement applied with respect to school searches), which the Supreme Court subsequently reversed.

of his assertion that the search here violated the Fourth Amendment. The state, for its part, reprises its alternative contentions that youth's conduct in emptying his pockets was consensual, that Stiles's actions were lawful as authorized under the district's administrative search policies, and—again in the wake of the Supreme Court's decision in *M. A. D.*—that the circumstances here satisfied *M. A. D.*'s requisites, as well as those prescribed in *T. L. O.*

We affirm because the juvenile court's determination that youth consented to the search is dispositive. Given that conclusion, we do not reach—and imply no view as to—the alternative contentions pertaining to whether the circumstances here established the requisite "reasonable suspicion" under the *M. A. D.* and *T. L. O.* formulations[7] or whether Stiles's conduct here effected a lawful administrative search.

In so holding, we emphasize that our standard of review is non-*de novo*. *See* 246 Or App at 423 n 2. Accordingly, we are constrained to affirm if there is any evidence in the record supporting the trial court's explicit, and independently sufficient, finding that "[youth] consented to the search." *See, e.g., State v. B. B.,* 240 Or App 75, 77, 245 P3d 697 (2010). As set out above, when examined by his counsel, youth gave flatly contradictory responses as to whether he felt that he "had a choice" to empty his pockets and whether he did so voluntarily. To be sure, as the colloquy continued, youth's responses became more ambiguous and ambivalent, and, ultimately, youth flatly denied that he "had a choice." But the juvenile court—like any trier of fact—was free, based on a variety of considerations, including youth's demeanor, to credit his initial responses. Indeed, in amplifying its credibility determinations, the trial court explained, "I mean he told his own attorney he thought he had a choice and *then he backtracked when he realized that wasn't the right answer.*" (Emphasis added.) In sum, the court ultimately credited youth's initial responses and disbelieved his subsequent recantation as belatedly self-serving. That is conclusive.

---

[7] *Cf. B. A. H.,* 245 Or App at 208-11 (reversing juvenile court's suppression of evidence obtained as the result of a school search; concluding that school officials "had reasonable suspicion of a threat to safety" cognizable under *M. A. D.*).

The juvenile court did not err in determining that youth emptied his pockets consensually and, thus, in denying the motion to suppress.

Affirmed.