Submitted May 25, reversed and remanded December 29, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

GEORGE DANIEL SNOW,
*Defendant-Appellant.*

Jackson County Circuit Court
091245FE; A143066

268 P3d 802

Peter Gartlan, Chief Defender, and Ingrid A. MacFarlane, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Douglas F. Zier, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

SERCOMBE, J.

**SERCOMBE, J.**

Defendant appeals a judgment of conviction for one count of possession of methamphetamine, ORS 475.894, and one count of delivery of methamphetamine, ORS 475.890, assigning error to the trial court's denial of his motion to suppress evidence that was obtained during a search of his cigarette package at a security checkpoint in the Jackson County Courthouse. Defendant argues that the evidence was procured by a warrantless search in violation of Article I, section 9, of the Oregon Constitution.[1] The state argues that the evidence was obtained pursuant to a valid "administrative search" and that, in any event, defendant implicitly consented to that search upon entering the courthouse. We conclude that the search violated Article I, section 9, and, accordingly, reverse and remand.

The relevant facts are undisputed. Multiple notices are displayed at the entrance to the Jackson County Courthouse advising visitors that weapons and "any other item[s] deemed inappropriate" are prohibited in the courthouse and that "persons and property entering this court facility may be searched and/or seized to enforce compliance with UTCR 3.180 and 6.180." Persons who enter the courthouse are required to pass through a metal detector and to submit their property for examination by an x-ray machine. Defendant entered the courthouse and submitted his property for an x-ray inspection. Security officer Hellyer,[2] who was operating the security checkpoint, examined the x-ray image, cleared the property, and then asked defendant to step through the metal detector. Defendant activated the metal detector, and, as a consequence, Hellyer employed a "hand wand" to determine the precise location of any metal objects on defendant. That handheld detector indicated that defendant had metal in his pocket. Defendant admitted that he had a house key in

---

[1] Article I, section 9, provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

[2] Although Hellyer is employed by the Jackson County Sheriff's Department and wears a sheriff's uniform, she is a security officer and not a deputy sheriff.

his pocket, and he removed the key. Hellyer then noticed a "square box shape" in defendant's pocket; she thought it might be a cigarette package. Defendant indicated that he indeed had a cigarette package in his pocket, and Hellyer asked him to remove it. The cigarette package and key were placed in a bowl to be x-rayed. Hellyer finished checking defendant with the handheld metal detector. Then, before she x-rayed defendant's remaining property, she picked up the cigarette package, opened it, and looked inside. She saw "[l]ittle white cellophane packages" containing what was later determined to be methamphetamine.

Defendant was charged with possession and delivery of methamphetamine. Before trial, he moved to suppress the evidence of methamphetamine, arguing that the warrantless search of his cigarette package violated his right against unreasonable search or seizure under Article I, section 9.[3] The state argued that the search was justified by two "recognized exception[s]" to the warrant requirement. First, the state contended that the search was a "valid administrative search" conducted for purposes of security rather than criminal law enforcement. Second, the state contended that defendant implicitly consented to the search by entering the courthouse with notice that he could be subjected to a search.

The state relied upon two different administrative policies as sources of authority for the search: a "security plan" written by court administrators and an order (Order 94-5) promulgated by the presiding judge of the Jackson County Circuit Court in 1994. The security plan was created pursuant to "Uniform Trial Court Rule 6.180[,] * * * Order 94-5, * * * [and] Oregon Revised Statutes 1.180 to 1.182."[4] The security plan provided, in relevant part:

---

[3] Defendant also argued below that the search violated his rights under the Fourth Amendment to the United States Constitution. He does not renew that argument on appeal.

[4] Uniform Trial Court Rule 6.180 provides that, "[u]nless otherwise ordered by the court, no person except a law enforcement officer shall possess in a court facility a firearm, knife, device, or hazardous substance capable of inflicting death or physical injury."

ORS 1.180 and ORS 1.182 allow for the formation of advisory committees on court security and the creation of security plans.

"General public entering the Jackson County Justice Building through the public entrance shall:

"(a)   Be screened for contraband and weapons utilizing a walk through metal detector; and

"(b)   All brief cases, purses, packages, boxes, etc. shall be examined with x-ray equipment."

Order 94-5 was similarly created pursuant to Uniform Trial Court Rule (UTCR) 6.180. It provided, in part:

"IT IS * * * ORDERED that the Jackson County Sheriff, or any law enforcement officer shall enforce UTCR 6.180 and ORS 166.370 by every lawful necessary means, including searches of an individual's person and carried item, and seizure of a firearm, knife, device, or hazardous substance capable of inflicting death or physical injury, to prevent any person from entering or being within any court facility with any items proscribed from possession in a court facility by UTCR 6.180 or ORS 166.370. In carrying out any search under this order, law enforcement officers shall not examine written documents encountered solely through such a search.

"IT IS FURTHER ORDERED that any person entering any court facility as defined by this order shall submit to a search of their person and a search of their bags, briefcases, valises, and hand-carried items for purposes of insuring compliance with UTCR 6.180 and ORS 166.370. Refusal of a person to submit to a search as provided by this order shall result in removal of the person from the court facility."[5]

At a hearing on defendant's motion to suppress, the Jackson County Court manager, Kleker, who supervises court security and updates the court's written security policies, testified that, when items are discovered by the metal detector, they are placed in a bin and x-rayed. Kleker further testified, however, that if an item placed in a bin "look[s] suspicious," or if the security officers "have some reason to believe that that item is going to contain contraband and/or be a dangerous weapon," then the officers may examine the item before it goes through the x-ray machine. According to

---

[5] ORS 166.370 prohibits possession of a firearm or dangerous weapon in a public building or court facility.

Kleker, if a person does not want an item to be x-rayed, the person is permitted to leave the building.

Hellyer also testified at the hearing. She stated that she opened defendant's cigarette package to check for weapons. In her opinion, it was the court's practice to have officers always physically inspect items that were taken from people's pockets in order to ensure that no concealed weapons entered the facility.

After the hearing, the trial court found that, although "by itself, Jackson County's Court [security plan did] not authorize court security personnel to look into the defendant's cigarette package, there is broader authority for searching under Order 94-5." Under that policy, the trial court concluded, "Hellyer was not limited to an x-ray search or a metal detector search." Thus, because "Hellyer did not escalate her search into a search for general criminal activity, but testified that she continued to be concerned about weapons," the court concluded that "Hellyer operated within the bounds of the Jackson County Court policy and Order 94-5." Accordingly, the court denied defendant's motion because it determined that the search was justified by a valid administrative policy. Defendant entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress.

On appeal, defendant first contends that the search of his cigarette package was not justified by the administrative search exception. Specifically, defendant argues that the policy on which the state relies fails to sufficiently limit the discretion of those implementing it, because it broadly authorizes a search of "an individual's person and carried item[s]."[6] According to defendant, the policy does not command that every person be searched, does not distinguish between open and closed containers, and contains only one limitation—that written documents not be examined. Thus,

---

[6] Defendant also argues that the policy does not authorize Hellyer, a security guard, to perform a search but authorizes only the sheriff or other law enforcement officers to do so. That argument was not preserved, and we do not address it further.

in defendant's view, the policy permits officers unbridled discretion in choosing who to search and in deciding the scope of a search.

The state responds that defendant failed to preserve that argument in the trial court and that, in any event, the policy "adequately limited the discretion and scope of searches conducted under its terms by requiring all person[s] entering the courthouse to be screened * * * and by limiting searches to weapons and prohibited items, such as by precluding examination of written documents found in possession of the searched individual."

At the outset, we address the state's preservation argument and conclude that the issue of whether the administrative policy adequately limited the officer's discretion was preserved. Before the trial court, defendant moved to suppress the evidence on the ground that the search of his cigarette pack violated Article I, section 9. It was the state's burden to show that the search was lawful. *State v. Haney*, 195 Or App 273, 278, 97 P3d 1211, *adh'd to as modified on recons,* 196 Or App 498, 103 P3d 108 (2004). In trying to meet that burden, the state argued that the officer's conduct fell within the administrative search exception. The state asserted that, among other requirements, the search must be conducted pursuant to a policy that "limit[s] officer discretion re[garding] the scope and intensity of the search." Defendant, in closing, advanced a general argument that the administrative policy did not authorize the search in this case. The trial court had an opportunity to, and in fact did, rule on the validity of the administrative search. *See State v. Nelson*, 246 Or App 91, 99, 265 P3d 8 (2011) ("An argument is adequately preserved if it is clear from the record that the opposing party had * * * a meaningful opportunity to address the issue, and the trial court had * * * an opportunity to resolve it." (Citation and internal quotation marks omitted.)). In concluding that the search was valid, the trial court necessarily found that the court's security policy adequately limited the discretion of those acting under it. In light of the state's argument and the trial court's ruling, we conclude that the issue was sufficiently preserved. *Cf. Smith v. Washington County*, 180 Or App 505, 517, 43 P3d 1171, *rev den*, 334 Or 491 (2002) (in declaratory judgment action, unlike a criminal case, it is not

the government's burden to demonstrate the lawfulness of administrative search procedures, and thus court would limit its review to specific theories advanced by the plaintiffs in their complaint).

We review for errors of law. *State v. Boone*, 327 Or 307, 309, 959 P2d 76 (1998). Article I, section 9, protects the right of the people against unreasonable searches and seizures. Under that provision, "[s]eizures or searches for evidence to be used in a criminal prosecution, conducted without a warrant or suspicion of wrongdoing," are *per se* unreasonable. *Nelson v. Lane County*, 304 Or 97, 101, 743 P2d 692 (1987). On the other hand, an administrative search—a search performed for purposes other than criminal law enforcement—does not run afoul of the constitution if it is conducted under

"a 'source of the authority,' that is, a law or ordinance providing sufficient indications of the purposes and limits of executive authority, and if it [is] carried out pursuant to 'a properly authorized administrative program, designed and systematically administered' to control the discretion of non-supervisory officers."

*Id.* at 104 (quoting *State v. Atkinson*, 298 Or 1, 9, 10, 688 P2d 832 (1984)); *see also Weber v. Oakridge School District 76*, 184 Or App 415, 431-34, 56 P3d 504 (2002), *rev den*, 335 Or 422 (2003) (discussing reasonableness of administrative searches under Article I, section 9). Thus, an administrative search must meet several requirements in order to be "reasonable" under Article I, section 9: (1) the search must be conducted for purposes other than criminal law enforcement, *State v. Coleman*, 196 Or App 125, 129, 100 P3d 1085 (2004), *rev den*, 338 Or 16 (2005); (2) the search must be conducted pursuant to a policy that is authorized by a politically accountable lawmaking body, *id.*; (3) the policy must limit the discretion of those conducting the search, *id.*; (4) the scope of the search authorized must be reasonable in relation to its purpose, *Weber*, 184 Or App at 437; and (5) the person performing the search must act within the bounds of the policy, *State v. Guerrero*, 214 Or App 14, 19, 162 P3d 1048 (2007). We conclude that the administrative policy does not meet the third criterion and, therefore, do not address the remaining requirements.

Defendant argues that the policy fails to meet the third criterion for a valid administrative search—that it be "designed and systematically administered" to control the discretion of those implementing it. *Atkinson*, 298 Or at 10. "The purpose of that requirement is to protect against arbitrariness and to ensure that individuals or particular items of property are not improperly singled out for special attention." *Weber*, 184 Or App at 436 (citation omitted).

Order 94-5 permits "searches of an individual's person and carried item[s]" and requires that "any person" entering the courthouse "submit to a search of their person and a search of their bags, briefcases, valises, and hand-carried items." That policy grants wide latitude to an officer to decide both who to search and the scope of a search. In other words, the policy does not specify which persons an officer must search—for instance, by requiring that *every* person's closed containers be searched—nor does the policy specify how intrusive any given search may be—for instance, by requiring that closed containers be examined only by x-ray as opposed to a visual search. *See, e.g., Department of Justice v. Spring*, 201 Or App 367, 373, 120 P3d 1 (2005), *rev den*, 340 Or 483 (2006) (statute authorizing DNA testing to establish paternity adequately limited discretion where it required every person who denied paternity to submit to a test); *Coleman*, 196 Or App at 130 (police waiting room policy adequately limited discretion where it required "every person" to be searched and prohibited searches of closed containers); *Weber*, 184 Or App at 436-37 (school drug testing policy adequately limited discretion where students were selected randomly and testing procedures were standardized). Instead, the policy would permit a security officer searching for weapons to subject one person to a metal detector and x-ray examination, while subjecting another to a full strip search. We readily conclude that that policy fails to limit the discretion of those conducting a search under its authority. *See, e.g., State v. Eldridge*, 207 Or App 337, 342-43, 142 P3d 82 (2006) (police inventory policy did not adequately limit discretion because it lacked standardized criteria or procedures regarding the scope of each inventory); *Haney*, 195 Or App at 280-81 (assuming that policy authorized officer to search car after accident, it did not adequately limit officer discretion because

it provided no guidelines on the physical scope of searches); *State v. Willhite*, 110 Or App 567, 573-74, 824 P2d 419 (1992) (although police inventory policy specified that every towed vehicle must be inventoried, and specified a standardized procedure for removing property, it was nonetheless defective because "it [was] so general that an officer [could] look everywhere he [could] think of"). Thus, the search in this case—carried out pursuant to that policy—violated Article I, section 9.

We need not address the merits of the state's alternative argument that defendant implicitly consented to a search of his cigarette package by entering the courthouse with notice that he could be subjected to a search. In *Smith*, we explained that consent can be implied in circumstances in which the person submitting to a search is doing so because he or she is faced with an unpleasant choice—such as the choice between entering the courthouse or not entering it or having to leave certain possessions outside." 180 Or App at 511. However, such consent is valid only if

"the choice to which the government puts the citizen is itself lawful. Thus, * * * the validity of any consent implied from a citizen's decision to submit to a search as a condition of entry into the courthouse turns on whether the government lawfully implemented the security procedures as an administrative search."

*Id.* at 512; *see also id.* at 515 (reiterating that "a citizen's decision to submit to the courthouse security procedures rather than leave the courthouse is a valid basis to imply consent only *if* [the] plaintiffs' challenge to the * * * security procedures fails" (emphasis in original)). Here, having determined that the administrative search was unlawful, we cannot conclude that defendant implicitly consented to the search. Accordingly, the trial court erred in denying defendant's motion to suppress.

Reversed and remanded.